1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LUCY ATAYDE, individually and as              No.  1:16-cv-00398-DAD-SAB
     successor in interest of decedent
12   RICHARD MICHAEL RAMIREZ,

13                       Plaintiff,                ORDER GRANTING STATE DEFENDANTS'
                                                  MOTION TO DISMISS
14              v.
                                                  ORDER GRANTING IN PART AND
15   NAPA STATE HOSPITAL, STATE OF                DENYING IN PART COUNTY
     CALIFORNIA DEPARTMENT OF                     DEFENDANTS' MOTION TO DISMISS
16   STATE HOSPITALS, a public entity,
     DOLLY MATTEUCCI, individually,               (Doc Nos. 45, 49)
17   DANA WHITE, R.N., individually,
     CALIFORNIA FORENSIC MEDICAL
18   GROUP, INC., TAYLOR FITHIAN, M.D.,
     HEATHER GOODE, M.D., SEAN RYAN
19   R.N., DEBORAH MANDUJANO, R.N.,
     CORINA DENNING, R.N., COUNTY OF
20   MERCED, a municipal corporation, former
     Sheriff TOM CAVALLERO, in his
21   individual and official capacities,
     Undersheriff JASON GOINS, and DOES 1
22   THROUGH 10, jointly and severally,

23                       Defendants.

24

25          On January 5, 2016, Lucy Atayde ("plaintiff")—the mother of Richard Michael Ramirez

26   ("decedent")—filed suit in the U.S. District Court for the Northern District of California against

27   Napa State Hospital ("NSH"), California Forensic Medical Group, Inc. ("CFMG"), and Merced

28   County ("County")—as well as individual employees and officers of each organization—after her

son committed suicide while in the custody of the Merced County Sheriff's Department.  (Doc. No. 1.).  On February 2, 2016, NSH and its employees (the "state defendants") filed a motion to dismiss the complaint for lack of jurisdiction, or alternatively, to transfer venue to the Eastern District of California.  (Doc. No. 12.)  On February 8, 2016, the County, CFMG, and their officers and employees (the "county defendants") also filed a motion to dismiss.  (Doc. No. 25.)  On March 21, 2016, the case was transferred to this district.  (Doc. No. 40.)

On April 6, 2016, the county defendants again filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 45.)  On April 12, 2016, the state defendants filed a motion to dismiss as well.  (Doc. No. 49.)  Plaintiff filed oppositions to both motions on May 3, 2016.  (Doc. Nos. 50, 51.)  The county defendants filed a reply on May 7, 2016.  (Doc. No. 52.)  The state defendants filed a reply on May 10, 2016.  (Doc. No. 54.)  On May 17, 2016, the court heard oral argument on the pending motions.  (Doc. No. 56.)  Attorney Michael Haddad appeared telephonically at that hearing on behalf of plaintiff; Deputy Attorney General Jennifer Marquez appeared telephonically on behalf of the state defendants; and attorney Jerome Varanini appeared telephonically on behalf of the county defendants.  (Doc. No. 56.)

## I.   Background

### a.   Parties

Defendants are divided into two primary groups, with each group having filed its own motion to dismiss.  The county defendants include Merced County; the former sheriff of Merced County, Tom Cavallero; and Jason Goins, a Lieutenant and commander in charge of the Merced County jail at the time decedent was confined there.  The county defendants also include CFMG and specific CFMG employees.  According to plaintiff, CFMG provides health care—including mental health care—to pre-trial and post-conviction detainees and prisoners held in Merced County jails pursuant to a contract with the County.  The CFMG employees named in the complaint include Taylor Fithian, M.D., a policy-making officer for CFMG; Heather Goode, M.D., a treating psychiatrist; and Sean Ryan, R.N., Deborah Mandujano, R.N., and Corina Deering, R.N., all psychiatric nurses.  The other group of defendants consists of the state defendants including NSH; Dana White, R.N., an employee of NSH responsible for screening and

2

1   admitting patients; and Dolly Matteucci, the executive director and highest policy making official

2   of NSH.

3         *b. The Allegations of the Complaint*

4     In the complaint plaintiff alleges as follows.  On December 15, 2014, decedent—a 27-

5   year-old man suffering from severe psychosis—killed himself while in the custody of the Merced

6   County Sheriff's Department.  (Doc. No. 1, Complaint ("Compl.") at ¶ 101.)  Decedent

7   committed suicide after being held in pre-trial detention for nearly four months.  According to the

8   complaint, the following events led to decedent's suicide.

9     Decedent first arrived at Merced County Jail on August 23, 2014.  (Id. at ¶ 26.)  On

10   August 29, 2014, the Merced County Superior Court suspended the criminal proceedings against

11   decedent due to concerns that he was not mentally competent to stand trial.  (*Id*. at ¶ 28.)  The

12   court referred decedent to Dr. Phillip Hamm, Ph.D., for an evaluation pursuant to California Penal

13   Code § 1368.  (*Id*.)  In a report completed on September 22, 2016 and adopted by the Merced

14   County Superior Court on September 26, 2016, Dr. Hamm declared decedent incompetent to

15   stand trial on the grounds he was likely suffering Psychotic Disorder NOS (not otherwise

16   specified).  (*Id*. at ¶¶ 53, 60.)

17     According to plaintiff, the county defendants knew of decedent's severe mental illness

18   prior to the court adopting Dr. Hamm's report.  The decedent's mental illness was readily evident

19   through his erratic behavior and bizarre comments, including telling defendant Goode, decedent

20   was "hearing voices and having major mood changes."  (*Id*. at ¶ 38.)  In response, defendant

21   Goode wrote decedent a prescription for Haldol—an antipsychotic medication—but failed to draft

22   a treatment plan or diagnose decedent as suffering from psychosis.  (*Id*.)  Moreover, decedent was

23   twice placed in, and twice released from, a safety cell because of his behavior; nonetheless, the

24   county defendants still failed to implement a treatment plan.  (*Id*. at ¶¶ 39–42.)  Furthermore,

25   decedent refused to take his prescribed antipsychotic medications, and, in response, CMFG

26   employees and agents simply signed release of liability forms for refusal to take medications.  (*Id*.

27   at ¶ 56.)  Decedent never signed these release forms himself.  (*Id*.)

28   /////

In response to Dr. Hamm's report and its adoption, the Merced County Superior Court ordered a placement report to be submitted by October 15, 2014 and scheduled a report hearing for October 17, 2014.  (*Id*. at ¶ 60.)  In the period leading up to the report hearing, decedent engaged in a series of self-harming behaviors.  On September 27, 2014, while housed in segregated lockdown, decedent repeatedly struck the walls and door of his cell, causing his hand to become swollen and bruised.  (*Id*. at ¶ 61.)  On September 29, 2014, decedent attempted to commit suicide by hanging himself with a t-shirt.  (*Id*. at ¶ 64.)  On October 5, 2014, decedent again attempted to commit suicide by choking himself with his own hands.  (*Id*. at ¶ 70.)  In response to each suicide attempt, decedent was placed in a safety cell—generally for a period of two days—and given an updated prescription.  (*Id*. at ¶¶ 67, 69, 73, 75.)  However, after each incident of this kind, CMFG staff allegedly failed to develop a proper treatment plan in response thereto.  (*Id*. at ¶¶ 63, 69, 75.)

On October 24, 2014, the Merced County Superior Court ordered decedent to be committed to the trial competency program at defendant NSH or another appropriate facility.  (*Id*. at ¶ 78.)  In its order, the court noted "[decedent's] condition would deteriorate without treatment with medication and serious harm to physical and mental health would result."  (*Id*.)  NSH allegedly completed a pre-admission evaluation of decedent and approved decedent for admission.  (*Id*. at ¶ 74.)  Defendant Dana White, R.N., an employee of defendant NSH, allegedly stated in a letter dated October 9, 2016 that decedent would be admitted upon receipt of seven specific court documents.  (*Id*.)  According to plaintiff, defendant NSH received these documents before October 31, 2014.  (*Id*.)  However, decedent was never transferred to NSH.  Instead, decedent continued to be confined at the Merced County Jail and continued to engage in a course of conduct replicative of his earlier behavior, including making irrational, suicidal comments and engaging in self-harm.  (*Id*. at ¶¶ 87–100.)  Finally, decedent committed suicide on December 15, 2014 by hanging himself with a sweatshirt from his bunk.  (*Id*. at ¶ 101.)

### c.  Causes of Action

Plaintiff—both in her individual capacity and as successor in interest to decedent—alleges multiple causes of action against defendants.  In her first cause of action, brought pursuant to 42

4

U.S.C. § 1983, plaintiff claims defendants White, Fithian, Goode, Ryan, Mandujano, Denning, and Goins deprived decedent of his Fourth and Fourteenth Amendment rights through their deliberate indifference to his serious need for mental health treatment.  Plaintiff also claims these same defendants deprived her of her First Amendment right to familial association.  In her second cause of action, plaintiff seeks to extend liability for these constitutional deprivations to the County, CFMG, and the policy-making officials of each organization through *Monell* and supervisory liability.  In her third cause of action, plaintiff claims the county defendants are liable for the above referenced constitutional violations pursuant to California's Bane Act, codified at California Civil Code § 52.1.  In her fourth cause of action, plaintiff alleges the County, NSH, and CFMG violated the Americans with Disabilities Act and the Rehabilitation Act of 1973.  In her fifth cause of action, plaintiff alleges defendants White, NSH, the County, and Goins violated California Government Code § 845.6.  In her sixth cause of action, plaintiff brings a state law negligence claim against, Cavallero, Goins, and the County.  In her seventh, and final, cause of action, plaintiff brings a state law negligence *per se* claim against Cavallero, Goins, and the County.

## II.   Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

1    *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff

2    "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

3    that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

4    *Carpenters*, 459 U.S. 519, 526 (1983).

5          In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted

6    to consider material which is properly submitted as part of the complaint, documents that are not

7    physically attached to the complaint if their authenticity is not contested and the plaintiff's

8    complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*,

9    250 F.3d 668, 688–89 (9th Cir. 2001).

10    **III.   Analysis**

11        *a.  State Defendants' Motion to Dismiss*

12            *i.  First Cause of Action: Violation of 42 U.S.C. § 1983*

13          To bring a claim under § 1983, a plaintiff must show "a person acting under color of state

14    law . . . [engaged in] conduct [that] deprived the [plaintiff] of some right, privilege, or immunity

15    protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632–

16    33 (9th Cir. 1988); *see also Thornton v. City of St. Helena,* 425 F.3d 1158, 1164 (9th Cir. 2005);

17    *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1439 (9th Cir.1991).  The statute does not serve as

18    an independent source of substantive rights, rather it provides "a method for vindicating federal

19    rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Tatum v.*

20    *Moody*, 768 F.3d 806, 814 (9th Cir. 2014).

21          The state defendants argue plaintiff has failed to plead any nonconclusory facts which, if

22    proven, would show that they denied decedent a constitutional right, privilege, or immunity.  In

23    response, plaintiff contends that her complaint adequately pleads two constitutional harms: (1)

24    White was deliberately indifferent to decedent's serious medical needs while decedent was held

25    in custody as a pretrial detainee, and (2) White violated decedent's constitutional right to be free

26    from incarceration and to timely receive restorative treatment.

27    /////

28    /////

1            *1. The State Defendants Did Not Owe Decedent a Duty to Provide*

2                        *Medical Care for His Serious Medical Needs*

3            Under the due process clause, "persons in custody have the established right to not have

4    officials remain deliberately indifferent to their serious medical needs." *Gibson v. Cty. of*

5    *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds, Castro v. Cnty. of Los*

6    *Angeles*, No. 12-56829, 2016 WL 4268955, at *11 (9th Cir. Aug. 15, 2016) (quoting *Carnell v.*

7    *Grim*, 74 F.3d 977, 979 (9th Cir. 1996)).  Generally, when considering a motion to dismiss such a

8    claim, a court's analysis will focus on whether the plaintiff pled sufficient facts to permit the

9    court to infer the plaintiff had a "serious medical need" and a defendant was "deliberately

10   indifferent" to that need.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  However, here,

11   with respect to the state defendants, the court must assess a more basic question: was decedent in

12   the state defendants' custody?

13           "Custody" involves an involuntary relationship between the state and an individual in

14   which the individual is deprived of liberty to such an extent he becomes reliant on the state for the

15   provision of life's basic necessities.  *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489

16   U.S. 189, 200 (1989).  In the context of pretrial detainees alleging deliberate indifference to

17   serious medical needs, custody appears to be synonymous with confinement.  *See Clouthier v.*

18   *Cty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) ("In light of the Supreme Court's

19   rulings that *conditions of confinement* violate pretrial detainees' Fourteenth Amendment rights if

20   the conditions amount to punishment . . . and that failure to prevent harm amounts to punishment

21   where detention officials are deliberately indifferent . . . we have concluded that the 'deliberate

22   indifference' standard applies to claims that correction facility officials failed to address the

23   medical needs of pretrial detainees."); *see also Lolli v. County of Orange*, 351 F.3d 410, 419 (9th

24   Cir. 2003) (requiring plaintiff to show he was "(1) *confined* under conditions posing a risk of

25   objectively, sufficiently serious harm and (2) that the officials had a sufficiently culpable state of

26   mind in denying the proper medical care.") (internal quotation marks and citations omitted)

27   (emphasis added).  Here, plaintiff has failed to allege the state defendants confined decedent;

28   rather, plaintiff attempts to expand the scope of a deliberate indifference claim by arguing the

1   commitment order issued pursuant to California Penal Code § 1370 triggered a duty on the part of

2   the state defendants to provide decedent with appropriate medical care.  But neither Ninth Circuit

3   case law nor the plain language of § 1370—which doesn't even support the existence of a

4   custodial relationship between a state hospital and a pretrial detainee upon issuance of a

5   commitment order—warrant such an expansion.  *See* Cal. Penal Code § 1370(a)(1)(B)(i) ("the

6   court shall order that the mentally incompetent defendant *be delivered by the sheriff* to a state

7   hospital for the care and treatment of the mentally disordered") (emphasis added).

8            Accordingly, the state defendants' motion to dismiss plaintiff's deliberate indifference

9   claim will be granted.  However, plaintiff will be granted leave to amend in order to attempt to

10  cure this deficiency.

11                    *2.   The State Defendants Did Not Owe Decedent a Duty to Provide*

12                              *Him With Timely Restorative Treatment*

13           Plaintiff also alleges the state defendants violated decedent's substantive due process

14  rights by failing to provide him with timely restorative treatment.  Plaintiff relies primarily on the

15  decision in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), in advancing this

16  claim.  In *Mink*, an advocacy group representing the rights of mentally ill individuals sued the

17  Oregon State Hospital—the state mental hospital charged with evaluating and treating mentally

18  incapacitated defendants—and its administrators, alleging undue delays in admitting detained

19  defendants amounted to a deprivation of substantive due process rights.  *Id.* at 1105–07.  The

20  district court held months-long admittance delays resulted in mentally ill detainees being denied

21  their right to timely restorative treatment, and issued an injunction ordering all such individuals to

22  be admitted to the state hospital within seven days of their being certified as incompetent to stand

23  trial.  *Id.* at 1119.  On appeal, the Ninth Circuit affirmed the injunction.

24           The Ninth Circuit's holding in *Mink* establishes that "[incapacitated criminal defendants]

25  have a liberty interest in receiving restorative treatment," and that a defendant is deprived of this

26  liberty interest when *admittance* to a treatment facility is unreasonable delayed.  *Id.* at 1121.

27  However, in the complaint plaintiff has failed to allege facts showing the state defendants actively

28  denied decedent's admission to NSH.  The only nonconclusory allegations contained in plaintiff's

8

1   complaint posit that the state defendants processed decedent's paperwork and authorized his

2   admission to NSH by October 31, 2014.  Thus, it appears from the allegations of the complaint

3   that it was not a failure to admit that denied decedent the restorative treatment he was owed, but

4   rather, a failure to transfer.  (Compl. at ¶ 74.)  Plaintiff has not brought to the court's attention any

5   law—nor has the court found any in its own research—suggesting that, in California, a state

6   mental hospital has an affirmative duty to guarantee the timely transfer of a pretrial detainee

7   deemed incompetent to stand trial to its facility.  Nor has plaintiff pled any facts showing that the

8   state defendants assumed such a duty.  Accordingly, the state defendants' motion to dismiss will

9   be granted in this regard as well.  However, the court will grant plaintiff leave to amend.

10          Furthermore, because both of plaintiff's underlying §1983 claims are dismissed, defendant

11   Matteucci cannot be held liable under a theory of supervisory liability.  *See Hansen v. Black*, 885

12   F.2d 642, 646 (9th Cir. 1989) ("A supervisor may be liable if there exists either (1) his or her

13   personal involvement in the constitutional deprivation, or (2) a sufficient casual connection

14   between the supervisor's wrongful conduct and the constitutional violation.").  Nonetheless,

15   plaintiff is granted leave to amend as to this claim as well in order to attempt to cure this

16   deficiency.

17          *ii.   Fourth Cause of Action: Violation of ADA and Rehabilitation Act*

18          Title II of the ADA prohibits public entities from both discriminating against qualified

19   individuals with a disability and from excluding such individuals from benefiting from or

20   participating in a public program because of their disability.  42 U.S.C. § 12132.  Section 504 of

21   the Rehabilitation Act (RA) extends these protections to "any program or activity receiving

22   Federal financial assistance."  29 U.S.C. § 794.

23          "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

24   qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

25   discriminated against with regard to a public entity's services, programs, or activities; and (3)

26   such exclusion or discrimination was by reason of [his] disability."  *Lovell v. Chandler*, 303 F.3d

27   1039, 1052 (9th Cir. 2002).  "To establish a violation of § 504 of the RA, a plaintiff must show

28   that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the

benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id.*

Defendant NSH does not challenge that it—as a state run mental health hospital—or decedent—as an individual suffering from psychosis—fall within the purview of the ADA or RA. Rather, defendant NSH contends that plaintiff has failed to plead facts showing it failed to provide, or discriminated in the provision of, treatment to decedent because of his disability. The court finds this argument to be persuasive.

First, as discussed above, it has not been alleged that the state defendants acted in any affirmative manner to deny medical treatment to decedent. Rather, as plaintiff indicates in the allegations of her complaint, decedent's lack of treatment by the state facilities was not due to a denial of his admittance for treatment but a failure to transfer him to NSH. (Compl. at ¶ 74.) There are no facts alleged in the complaint before the court showing the state defendants are responsible for the apparent transfer debacle. Rather, based on California case law and the order issued by the Merced County Superior Court, it appears the county defendants were responsible for ensuring the timely transfer of decedent to the state facility. *See* Cal. Pen. Code § 1370(a)(1)(B)(i); (Doc. No. 1-1 at 3) ("It is further ordered and decreed that the Sheriff of Merced County take, convey and deliver [decedent] to the custody of Napa State Hospital . . . .").

Accordingly, plaintiff's fourth cause of action against the state defendants will also be dismissed with leave to amend.

### iii.   Fifth Cause of Action: Violation of California Government Code § 845.6

California Government Code § 845.6 provides, in relevant part:

> Neither a public entity not a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, . . . a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

The plain language of § 845.6 requires a prisoner or detainee to be in the custody of a public entity or employee before a duty to summon immediate medical care arises. Because it is not

1    alleged that the state defendants ever took custody of decedent, they cannot face § 845.6 liability.

2    Plaintiff's fifth cause of action as to the state defendants will also be dismissed with leave to

3    amend.

4              *b.  County Defendants' Motion to Dismiss*

5                   *i.  Injunctive Relief*

6         The county defendants challenge plaintiff's standing to seek injunctive relief.  A plaintiff

7    who seeks "to invoke the jurisdiction of the federal courts must satisfy the threshold requirement

8    imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of Los*

9    *Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also City of Oakland v. Lynch*, 798 F.3d 1159,

10   1163 (9th Cir. 2015).  This requires demonstrating an injury-in-fact traceable to the acts of the

11   defendant and capable of being redressed through a favorable decision.  *Chapman v. Pier 1*

12   *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citing *Fortyune v. American Multi-*

13   *Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).  Furthermore, to establish standing to seek

14   injunctive relief, a plaintiff must show "a sufficient likelihood that [he or she] will again be

15   wronged in a similar way[.]"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

16   2007) (en banc) (quoting *Lyons*, 461 U.S. at 101).

17        Here, the county defendants argue plaintiff is incapable of alleging facts showing she or

18   any member of her family is suffering an immediate and actual threat of future harm as a result of

19   the county defendants' challenged practices.  Plaintiff counters with two arguments.  First, she

20   argues injunctive relief has been deemed appropriate where defendants have engaged in a pattern

21   of unlawful conduct.  Second, she argues that dismissal at this point would be premature because

22   she has not been permitted to conduct discovery with respect to this issue.

23        Plaintiff's arguments are unpersuasive.  The court does not doubt injunctive relief is an

24   appropriate remedy for halting a pattern or practice of injurious behavior.  But to satisfy Article

25   III standing, a plaintiff must allege facts showing that the sought after injunctive relief targets a

26   pattern or practice presenting a "real and immediate" threat of future injury.  *Lyons*, 461 U.S. at

27   103; *see also O'Shea v. Littleton,* 414 U.S. 488, 496 (1974).  Past wrongs do not by themselves

28   amount to real and immediate threats of injury.  *See San Diego Cnty. Gun Rights Comm. v. Reno,*

1  98 F.3d 1121, 1126 (9th Cir. 1996); *see also O'Shea,* 414 U.S. at 495–96 ("Past exposure to

2  illegal conduct does not in itself show a present case or controversy regarding injunctive relief ...

3  if unaccompanied by any continuing, present adverse effect.").  Because decedent has

4  unfortunately passed away, he is incapable of suffering future injuries of the type alleged here.

5  Furthermore, plaintiff "does not seek to represent a class of . . . individuals [similarly situated to

6  decedent], and [her] complaint contains no factual allegations showing that [defendants] had

7  previously subjected [her] to unlawful conduct."  *Bass v. City of Fremont*, No. C12-4945 TEH,

8  2013 WL 891090, at *8 (N.D. Cal. Mar. 8, 2013); *cf. Rodriquez v. California Highway Patrol*, 89

9  F. Supp. 2d 1131, 1135–36 (N.D. Cal. 2000) (allowing for associational standing).

10      For these reasons, plaintiff's claim for injunctive relief against the county defendants will

11  be dismissed without leave to amend granted at this time.

12                    *ii.  Claims Against Defendant Cavallero In His Official Capacity*

13      The parties dispute whether plaintiff can sue both the County and defendant Cavallero in

14  his official capacity.  The court concludes that plaintiff cannot do so.

15      "[L]ocal government officials sued in their official capacities are 'persons' under § 1983

16  in those cases in which . . . a local government would be suable in its own name."  *Monell v.*

17  *Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n.55 (1978).  Thus, "[a]n official capacity suit

18  against a municipal officer is equivalent to a suit against the entity[,]" and naming both in a

19  complaint creates a redundancy.  *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff*

20  *Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66

21  (1985)).  "For this reason, when both an officer and the local government entity are named in a

22  lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and

23  may be dismissed."  *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1206 (E.D. Cal. 2008) (quoting

24  *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citation omitted)); see also *Ctr. for Bio-*

25  *Ethical Reform, Inc.*, 533 F.3d at 799; *Santana v. County of Yuba*, No. 2:15-cv-00794 KJM –

26  EFB, 2016 WL 1268107, at *12 (E.D. Cal. Mar. 31, 2016).

27      Plaintiff's contention to otherwise must be rejected.  Nonetheless, defendant Cavallero is

28  not dismissed from this action because plaintiff may still pursue her claims against him in his

1    individual capacity.  *See Santana*, 2016 WL 1268107, at *15 (arriving at same conclusion);

2    *Rendon v. City of Fresno*, No. 1:06-cv-01851, 2007 WL 2302340, at *6 (E.D. Cal. Aug. 8, 2007)

3    (same).

4           *iii.   Third Cause of Action: California's Bane Act, Cal. Civ. Code § 52.1*

5           The county defendants argue plaintiff's Bane Act claim must be dismissed because her

6    complaint is devoid of any factual allegation of threats, intimidation, or coercion levied at

7    decedent.

8           The Bane Act provides a cause of action for interference "by threats, intimidation, or

9    coercion" or attempted interference "with the exercise or enjoyment by any individual or

10   individuals of rights secured by the Constitution or laws of the United States, or of the rights

11   secured by the Constitution or laws of [California]."  Cal. Civ. Code § 52.1(a); *Venegas v. Cty. of

12   Los Angeles*, 32 Cal. 4th 820, 843 (2004).  The Bane Act "does not extend to all ordinary tort

13   actions because its provisions are limited to threats, intimidation, or coercion that interferes with a

14   constitutional or statutory right."  *Venegas*, 32 Cal. 4th at 843.  Thus, where the interference with

15   a constitutional right is the result of a defendant's mere negligence, as opposed to "deliberate or

16   spiteful" conduct, a plaintiff cannot claim violation of § 52.1.  *Shoyoye v. Cty. of Los Angeles*,

17   203 Cal. App. 4th 947, 957–59 (2012).

18          For certain constitutional violations, a plaintiff does not need to make independent

19   allegations concerning the defendant's coercive or threatening conduct in order to bring a § 52.1

20   claim.  For example, "[w]here Fourth Amendment unreasonable seizure or excessive force claims

21   are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of

22   coercion independent from the coercion inherent in the seizure or use of force."  *Johnson v.

23   Shasta Cty.*, 83 F. Supp. 3d 918, 934 (E.D. Cal. 2015) (quoting *Dillman v. Tuolumne Cty.*, No.

24   13-00404, 2013 WL 1907379, at *21 (E.D. Cal. May 7, 2013)).  However, district courts in

25   California have yet to reach a consensus as to whether a plaintiff, when bringing Bane Act claim

26   for deliberate indifference to serious medical needs, must plead threats and coercion independent

27   of the constitutional violation.  *Compare M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D.

28   Cal. 2013) ("Because deliberate indifference claims necessarily require more than 'mere

                                                    13

1    negligence,' a prisoner who successfully proves that prison officials acted or failed to act with

2    deliberate indifference to his medical needs . . . adequately states a claim for relief under the Bane

3    Act.") *with Moreno v. Los Angeles Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS(MANx), 2015

4    WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015) (granting county's motion for summary judgment

5    because "plaintiffs ha[d] not proffered evidence creating a triable issue of fact as to the existence

6    of threats, intimidation, or coercion by defendants in connection with the alleged deprivation of

7    [the] decedent's right to medical care . . .").

8           The court finds the reasoning of the decision in *M.H.* to be more persuasive, adopts that

9    analysis and finds that threats, coercion, and intimidation are inherent in a deliberate indifference

10   claim. *See Martinez v. County of Sonoma*, Case No. 15-cv-01953-JST,  2015 WL 5354071, at * 9

11   (N.D. Cal. Sept. 14, 2015); *D.V. v. City of Sunnyvale*, 65 F.Supp.3d 782, 789 (N.D. Cal. 2014)

12   ("This court therefore follows the substantial and growing authority that restricts *Shoyoye* to cases

13   where the defendant's actions were negligent [and holds that] Section 52.1 does not require

14   threats, coercion, or intimidation independent from the threats, coercion, or intimidation inherent

15   in the alleged constitutional or statutory violation."). The court premises this conclusion on the

16   fact that "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support" a claim

17   for deliberate indifference. *Lemire v. California Dep't of Corrections and Rehabilitation*, 726

18   F.3d 1062, 1082 (9th Cir. 2013).  Rather, a plaintiff must allege and show "a purposeful act or

19   failure to respond to a prisoner's pain or possible medical need . . . ." *Jett*, 439 F.3d at 1096.

20   This conscious disregard of a plaintiff's suffering due to an untreated medical condition extends a

21   deliberate indifference claim "far beyond [an] ordinary tort claim[ ]." *Venegas*, 32 Cal. 4th at

22   843.  Furthermore, because a plaintiff alleging a Bane Act violation based upon deliberate

23   indifference is required to allege and show affirmatively culpable conduct on the part of prison

24   officials, such a plaintiff does not rely solely on the inherently coercive nature of detention in

25   establishing his claim. *Cf. Shoyoye*, 203 Cal. App. 4th at 959 (holding "[t]he statute requires a

26   showing of coercion independent from the coercion inherent in . . . wrongful detention itself.").

27          Ultimately, a plaintiff advancing a Bane Act claim for deliberate indifference to his

28   serious medical needs is doing more than using his status as a prisoner to mutate a tort claim into

                                                    14

a constitutional claim; he is alleging prison officials knowingly deprived him of a constitutional right or protection through acts that are inherently coercive and threatening.[1]  For these reasons, defendants' motion to dismiss plaintiff's Bane Act claim will be denied

>    iv.   *Third, Fifth, Sixth, and Seventh Cause of Action: Failure to Adhere to the California Government Claims Act*

California's Government Claims Act provides "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board[.]"  Cal. Gov't Code § 945.4.  Such a claim must be filed within six months of the conduct alleged in the cause of action.  Cal. Gov't Code § 911.2(a) (citing Cal. Gov't Code §§ 945.4 & 950.2).

The county defendants argue plaintiff failed to timely file an administrative claim with respect to any cause of action accruing prior to December 13, 2014.  In support of this argument, the county defendants refer to a letter from the County of Merced's Risk Management Division barring plaintiff from pursuing pre-December 13, 2014 claims against the County.  (Doc. No. 45-2 at 2.)  They also note that plaintiff did not challenge this letter by filing a written application for leave to present an untimely claim pursuant to California Government Code § 911.4.

Nonetheless, plaintiff is not barred from pursuing state law causes of action stemming from decedent's suicide.  "Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants."  *General Sec. Servs. Corp. v. Cty. of Fresno*, 815 F. Supp. 2d 1123, 1132 (E.D. Cal. 2011) (quoting *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09

---

[1]   Moreover, the court notes that plaintiff's complaint includes allegations that the county defendants intentionally and with deliberate indifference: continued to house the decedent in segregated housing after it was determined that he was mentally ill and was refusing to take his prescribed medications; did not have decedent seen by a psychiatrist after his first suicide attempt while incarcerated or thereafter; never provided a treatment plan for decedent; failed to refer decedent to any state hospital or psychiatric facility and failed to provide decedent with constant observation but rather left him alone and unsupervised.  (Doc. No. 1 at 16-18, 20, 23, 26, 37-38.) Such allegations go far beyond mere reliance on the inherently coercive nature of detention in order to state a Bane Act claim.

1  (2007)).  Moreover, California recognizes the "continuing violation" doctrine, which "aggregates

2  a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations

3  period as accruing for all of them upon commission or sufferance of the last of them." *See Aryeh*

4  *v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1192 (2013).  Here, all of plaintiff's state law

5  claims stem from decedent's suicide which took place on December 15, 2014, a mere two days

6  after the erroneous time barrier imposed according to the Risk Management Division's letter.

7        Accordingly, the county defendant's motion to dismiss plaintiff's third, fifth, sixth and

8  seventh causes of action will be denied.

9              *v.  First and Second Causes of Action: Iqbal/Twombly Pleading Standard*[2]

10        Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is required to provide "a short

11  and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the

12  defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl.*

13  *Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (internal quotations and citations omitted).  A

14  complaint must contain more than "labels and conclusion, and a formulaic recitation of a cause of

15  action will not do." *Id*. at 555.  The complaint must contain enough facts to "nudge[ ] [a

16  plaintiff's] claims across the line from conceivable to plausible[.]" *Id*. at 570.  If a complaint

17  "raise[s] a right to relief above the speculative level[,]" it will survive a motion to dismiss.

18  *Occupy Sacramento v. City of Sacramento*, 878 F. Supp. 2d 1110, 1115 (E.D. Cal. 2012).

19        Here, plaintiff alleges both direct and supervisory liability pursuant to § 1983 against

20  defendant Goins.  Regarding the direct liability claim, plaintiff alleges Goins acted with deliberate

21  indifference in failing to provide decedent with timely, restorative treatment for a serious medical

22

23  [2]  In the title of Section VIII of their brief in support of their motion to dismiss, the county
defendants imply they will argue the County, Cavallero and Goins are entitled to qualified

24  immunity.  However, despite using this phrase in the heading, the county defendants do not make
any arguments concerning qualified immunity.  (County MTD at 11–13.)  Thus, for the purposes

25  of this motion, the county defendants' qualified immunity argument is waived.  *See Sahymus v.
Tulare County*, No. 1:14-cv-01633-MCE-GSA, 2015 WL 3466942, at *14 (E.D. Cal. June 1,

26  2015) ("Failure to adequately brief an argument amounts to a waiver of that argument.") (citing

27  *Aramark Facility Servs. v. SEIU Local 1877*, 530 F.3d 817, 924 n.2 (9th Cir. 2008)).  Rather, the
county defendants appear only to be arguing in this section of their brief that plaintiff's complaint

28  fails to satisfy the *Iqbal/Twombly* standard of Federal Rule of Civil Procedure Rule 8.

1    condition.  (Compl. at ¶ 115.)  A claim of deliberate indifference requires the plaintiff to allege

2    and ultimately show he suffered from a serious medical condition that would result in significant

3    injury—or pain and suffering—if left untreated; that the defendant engaged in a purposeful act or

4    failure to respond to the plaintiff's pain or possible need; and that the defendant's indifference

5    resulted in harm.  *Jett*, 439 F.3d at 1096.  However, plaintiff's complaint alleges no facts that, if

6    proven, would show Goins engaged in any such conduct.  Indeed, Goins is mentioned only twice

7    in the body of plaintiff's complaint, and in neither instance are any facts alleged which would

8    allow the court to reasonably infer he was directly involved in depriving decedent of his

9    constitutional rights.  (*See* Compl. at ¶¶ 15, 102.)

10         Plaintiff's supervisory liability allegations as to defendant Goins suffer the same

11   deficiency.  "A defendant may be held liable as a supervisor under § 1983 'if there exists (1) his

12   or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

13   between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652

14   F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

15   "The requisite causal connection can be established . . . by setting in motion a series of acts by

16   others, or by knowingly refusing to terminate a series of acts by others, which the supervisor

17   knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id*.

18   at 1207–08 (internal quotation marks and citations omitted).  "[W]hen a supervisor is found liable

19   based on deliberate indifference, the supervisor is being held liable for his or her own culpable

20   action or inaction, not held vicariously liable for the culpable action or inaction of his or her

21   subordinates."  *Id*. at 1207.

22         In the complaint plaintiff alleges Goins was responsible for implementing and directing

23   policies that resulted in CMFG and Merced County Jail employees acting with deliberate

24   difference to decedent's medical needs.  However, plaintiff does not allege any facts in the

25   complaint even suggesting that Goins engaged in wrongful conduct.  Moreover, the complaint

26   fails to allege any specific policies implemented by Goins that lead to decedent's death.  *Cf.*

27   *Estate of Prasad ex rel. Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1113–14 (E.D. Cal. 2013)

28   (supervisory liability established where jail officials implemented dual policies limiting the

1   presence of medical staff to 20 hours a day and prohibiting non-medical staff from obtaining care

2   for inmates, leading to death of inmate).  Rather, in the complaint plaintiff appears to rely solely

3   on Goins's position as the commander of the jail in which decedent died in order to attach

4   liability to him.  But supervisory liability is distinct from vicarious liability.  *Starr*, 652 F.3d at

5   1207.  Therefore, plaintiff's second cause of action for supervisory liability against defendant

6   Goins will also be dismissed without prejudice.

7          However, the same is not true for defendant Cavallero.  Plaintiff's complaint adequately

8   alleges that defendant Cavallero engaged in supervisory conduct that deprived decedent of a

9   constitutional right by pointing to the transfer order issued by the Merced County Superior Court.

10  The transfer order indicated defendant Cavallero had knowledge of decedent's condition and his

11  need for mental health treatment.  Furthermore, plaintiff adequately alleges that defendant

12  Cavallero took no steps, as sheriff, to secure treatment for decedent despite his knowledge of

13  decedent's precarious mental condition.  Accordingly, defendant's motion to dismiss the second

14  cause of action as to defendant Cavallero will be denied.

15                  *vi.   Second Cause of Action: Monell Liability*

16         To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official

17  policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed

18  injury.'"  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) (quoting *Harper v. City of*

19  *Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).  A "policy" can be established in one of three

20  ways.  *See Clouthier*, 591 F.3d at 1249–50.  "First, a local government may be held liable 'when

21  implementation of its official policies or established customs inflicts the constitutional injury.'"

22  *Id*. at 1249 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1979)

23  (Powell, J. concurring)).  Second, a public entity may be held liable for a policy of inaction or

24  omission, such as when a public entity "fail[s] to implement procedural safeguards to prevent

25  constitutional violations" or when it fails to adequately train its employees.  *Tsao*, 698 F.3d at

26  1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Clouthier*, 591 F.3d

27  at 1249 (noting that a failure to train claim requires a plaintiff to show that "the need for more or

28  different training [was] so obvious, and the inadequacy so likely to result in the violation of

18

1    constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately

2    indifferent to the need.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Third, a

3    local government may be held liable under § 1983 when 'the individual who committed the

4    constitutional tort was an official with final policy-making authority' or such an official 'ratified a

5    subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at

6    1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

7            The county defendants argue plaintiff's boilerplate recitations in her complaint fail to

8    adequately allege *Monell* liability under any of the three branches discussed above. The court

9    finds this argument to be persuasive. While "Rule 8 . . . does not require 'detailed factual

10   allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me

11   accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In the context of a *Monell*

12   claim, the *Iqbal/Twombly* standard requires a plaintiff to, at a minimum, "identif[y] the

13   challenged policy/custom, explain[ ] how the policy/custom was deficient, explain[ ] how the

14   policy/custom caused the plaintiff harm, and reflect[ ] how the policy/custom amounted to

15   deliberate indifference[.]" *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

16   Instructive in this regard is the decision in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir.

17   2001). There, the Ninth Circuit held a plaintiff had adequately pled an omission-based *Monell*

18   claim against the Los Angeles Police Department by alleging the police routinely misidentified

19   homeless people, the practice resulted in him being extradited to New York where he was

20   imprisoned for two years, and such harm could have easily been avoided by implementing routine

21   identification measures such as fingerprinting. *Id*. at 682.

22           Here, plaintiff argues that in the complaint she has included a litany of policies (and

23   omissions) that harmed decedent. (Opp. at 23–25 (citing Compl. at ¶ 127)). However, a reading

24   of the allegations of plaintiff's complaint reveals the cited language contains only threadbare

25   recitals of the elements of a *Monell* claim. For example, plaintiff claims the County and CFMG

26   had a policy "to deny inmates at the COUNTY'S jail access to appropriate, competent, and

27   necessary care for serious medical and psychiatric needs[.]" (Compl. at ¶ 127). Another such

28   example is the allegation that decedent was harmed because the county defendants failed to

1   "provide appropriate and adequate medical or mental health care for inmates with serious medical

2   needs." (*Id.*)  Such generic language does not survive an *Iqbal/Twombly* challenge.  To conclude

3   otherwise would essentially create *Monell* liability for public entities anytime a public employee's

4   conduct gave rise to a § 1983 claim.  In other words, *Monell* liability would revert to *respondeat*

5   *superior* liability, something expressly rejected by the Supreme Court.  *Monell*, 436 U.S. at 691.

6        Plaintiff also claims policy-making officials for the county defendants—specifically

7   defendants Cavallero and Fithian—ratified the acts of their subordinates.  But these allegations

8   are also threadbare.  For example, plaintiff alleges "that such policymakers ha[d] direct

9   knowledge of the fact that [decedent] was unlawfully denied necessary care for his serious

10  medical needs, and denied timely restorative treatment, among other rights and

11  accommodations," and ". . . the authorized policymakers . . . have approved of the individually

12  named Defendants' . . . conduct and decisions in this matter . . . and . . . made a deliberate choice

13  to endorse such conduct and decisions[.]"  (Compl. at ¶ 131)  Plaintiff also alleges facts indicating

14  that both defendants Cavallero and Fithian had knowledge of decedent's severe mental illness and

15  need for treatment.  (Compl. at ¶¶ 25, 69, 79).  However, a policymaker's "knowledge of an

16  unconstitutional act does not, by itself, constitute ratification."  *Weisbuch v. Cty. of Los Angeles*,

17  119 F.3d 778, 781 (9th Cir. 1997).  Also, "a policymaker's mere refusal to overrule a

18  subordinate's completed act does not constitute approval."  *Christie v. Iopa*, 176 F.3d 1231, 1239

19  (9th Cir. 1999).  Rather, "[t]he policymaker must have knowledge of the constitutional violation

20  and must make a 'conscious, affirmative choice' to ratify the conduct at issue."  *Garcia v. City of*

21  *Imperial*, No. 08CV2357 BTM(PCL), 2010 WL 3911457, at *1 (S.D. Cal. Oct. 4, 2010) (citing

22  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).  For example, ratification can be shown by a

23  superior officer's decision to exculpate alleged misconduct based on the findings of a noticeably

24  flawed investigation.  *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991).

25        Here, plaintiff's complaint provides nothing more than conclusory allegations that

26  defendants Cavallero and Fithian ratified the unconstitutional conduct of their subordinates.  That

27  is not sufficient.  Accordingly, plaintiff's *Monell* claim against the county defendants will be

28  dismissed with leave to amend granted.

**IV.    Amendment**

With respect to any amended complaint plaintiff elects to file in an attempt to cure the deficiencies noted above, she is reminded of the following.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in any amended complaint plaintiff elects to file, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The court will order that any amended complaint be filed within 21 days of the date of the service of this order.

**V.    Conclusion**

For the reasons stated above reasons:

1.    The state defendants' motion to dismiss (Doc. No. 49) is granted; and

   a.    plaintiff's first cause of action for violation of 42 U.S.C. § 1983 against defendant White is dismissed with leave to amend;

   b.    plaintiff's second cause of action based upon supervisory liability for violation of 42 U.S.C. § 1983 against defendant Matteucci is dismissed with leave to amend;

   c.    plaintiff's fourth cause of action for violation of the ADA and the RA against defendant NSH is dismissed with leave to amend;

   d.    plaintiff's fifth cause of action for violation of California Government Code § 845.6 against defendants NSH and White is dismissed with leave to amend;

2.    The county defendants' motion to dismiss (Doc. No. 45) is granted in part; and

   a.    plaintiff's prayer for relief for injunction relief is dismissed without leave to amend.

   b.    plaintiff's claims against defendant Cavallero in his official capacity only are dismissed without leave to amend;

   c.    plaintiff's second cause of action for supervisory liability against defendant Goins is dismissed with leave to amend;

21

     d.  plaintiff's second cause of action for *Monell* liability against the county defendants is dismissed with leave to amend; and

     e.  the county defendants' motion to dismiss is denied in all other respects.

IT IS SO ORDERED.

Dated:   **September 15, 2016**

UNITED STATES DISTRICT JUDGE