# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ATAYDE,<br><br>       Plaintiff,<br><br>    v.<br><br>NAPA STATE HOSPITAL, et al.,<br><br>       Defendants. | Case No. 1:16-cv-00398-DAD-SAB<br><br>ORDER RE INFORMAL DISCOVERY DISPUTE GRANTING PLAINTIFF'S REQUEST FOR ORDER COMPELLING PRODUCTION<br><br>(ECF Nos. 181, 183, 184) |

Currently before the Court is a discovery dispute between the parties that was the subject of an informal hearing held on February 7, 2020.

## I.

## BACKGROUND

### A.    Procedural History

Plaintiff filed this action on January 5, 2016, and is proceeding on a second amended complaint filed on June 11, 2019.  (ECF Nos. 1, 148.)  The action involves the suicide of Richard Ramirez that occurred in Merced County jail while he waited to be transferred to Napa State Hospital after he was found incompetent to stand trial.  (ECF No. 148; Joint Informal Discovery Dispute Letter Brief ("Br.") 1, ECF No. 183.)  Plaintiff Lucy Atayde is proceeding individually and as successor in interest of the decedent and brings civil rights and wrongful death claims against the state hospital, Merced County, the jail medical provider, California Forensic Medical

1

Group ("CFMG"), and individual Defendants that were involved.  (Id.)  Plaintiff brings claims for punitive damages against the individual Defendants and CFMG.  (Id.)

On January 31, 2020, at the parties' request, the Court scheduled an informal hearing to be held on February 7, 2020, to discuss a discovery dispute.  (ECF No. 181.)  On February 5, 2020, the parties filed a joint informal discovery dispute letter brief outlining the contentions of the parties regarding the dispute.  (ECF No. 183.)  On February 7, 2020, the Court held the informal hearing via telephonic conference call with the parties.  (ECF No. 184.)  Theresa Allen appeared on behalf of Plaintiff.  (Id.)  Amie McTavish appeared on behalf of Defendant Napa State Hospital (State of California), and individual Defendants Dolly Matteucci, Dana White, Patricia Tyler, Cindy Black, and Diane Johnston Mond (collectively identified as the "State Defendants").[1]  (Id.)  Counsel Jemma Parker Saunders appeared on behalf of Defendants CFMG, Taylor Fithian, Heather Goode, Sean Ryan, Deborah Mandjuno, and Corina Denning (the "CFMG Defendants").  (Id.)  The letter brief was only signed by counsel for Plaintiff and by Amy McTavish, counsel for the State Defendants.  (ECF No. 183.)

### B.    The Discovery Dispute

On December 6, 2019, Plaintiff served requests for production, set four, requesting financial documents from the period of January 2016 to the present, in support of the punitive damages claim.  (Br. 1.)  On January 3, 2020, the State Defendants served what Plaintiff describes were "lengthy, identical boilerplate objections" to the requests, and did not produce any documents.  (Id.)  The State Defendants objected that the requests were overly broad, burdensome, and not discoverable, claiming the individual State Defendants had no personal involvement in the events surrounding the death, and thus the discovery was not relevant or proportional to the needs of the case.  (Id.)

Plaintiff argues that the financial information is relevant to the claim for punitive damages, and discoverable at this stage of the proceedings even without a *prima facie* showing

---

[1]  Although referred to as the State Defendants, the crux of this discovery dispute only applies to the individual state employees that the discovery is directed at, not Defendant Napa State Hospital.  At the hearing, Plaintiff confirmed that the order compelling discovery is sought against Defendants: (1) Dolly Matteucci; (2) Dana White; (3) Patricia Tyler; (4) Cindy Black; and (5) Diane Mond.

that punitive damages may be recovered. (Br. 1-2.) Plaintiff requests the Court to compel production of the financial documents requested, "limited to the period of January 2018 to the present."[2] (Br. 2.)

The State Defendants first argue that the Ninth Circuit recognizes a public policy interest against the unnecessary disclosure of personal financial information, and that Plaintiff must show relevance and a "compelling need" for the information because it cannot be readily obtained elsewhere. (Br. 3.) The State Defendants also emphasize that the Ninth Circuit has not decided the issue of whether a plaintiff must make a *prima facie* showing of entitlement to punitive damages prior to obtaining discovery concerning the financial information of a defendant. (Id.) In this regard, the State Defendants argue that given they are sued in their individual capacities, an award of punitive damages is predicated on a showing their conduct was maliciously wanton, oppressive, or in reckless disregard of rights, and here they had no personal knowledge of the decedent, had no personal duty to the deceased, and made no affirmative or passive decisions relating to the decedent's wait time for admission. (Id.) Therefore, the discovery is not relevant or proportional to the needs of the case. (Br. 4.)

State Defendants also argue the requests are overbroad as to the time frame, stating that if the Court is inclined to compel production, Plaintiff "must narrow their requests for financial information to a period of two years." (Br. 4.) As confirmed at the teleconference, Plaintiff now only seeks documents covering the more limited two-year period.

The State Defendants also argue that the information can be obtained from other sources because the State Defendants' salaries and reportable investments are equally and publicly available to Plaintiff by searching public salary databases and investment disclosure forms. (Br. 4.) Thus, the State Defendants argue that if the Court determines the financial information is relevant, the public information is sufficient and they should not be required to produce additional information as it would create an unnecessary burden which tramples on the State

---

[2] It was unclear from the letter brief whether Plaintiff was making a concession in reducing the time period from January 2016 as originally requested, to January of 2018. (Br. 1-2.) At the teleconference, counsel for Plaintiff confirmed Plaintiff is only seeking an order compelling production since January of 2018.

1 Defendants' right to privacy and their families' rights to privacy.  (Id.)

2                                    **II.**

3                           **LEGAL STANDARD**

4          Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter

5   that is relevant to any party's claim or defense and proportional to the needs of the case,

6   considering the importance of the issues at stake in the action, the amount in controversy, the

7   parties' relative access to relevant information, the parties' resources, the importance of the

8   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

9   outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in

10  evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact

11  more or less probable than it would be without the evidence; and (b) the fact is of consequence in

12  determining the action."  Fed. R. Evid. 401.

13         Rule 34 of the Federal Rule of Civil Procedure provides that a party may serve upon any

14  other party a request for production of any tangible thing within the party's possession, custody,

15  and control that is within the scope of Rule 26.  Fed. R. Civ. P. 34(a)(1)(B).  The party receiving

16  the request has thirty days in which to respond.  Fed. R. Civ. P. 34(b)(2).  A party may move for

17  an order compelling production where the opposing party fails to produce documents as

18  requested under Rule 34.  Fed. R. Civ. P. 37(a)(3(B)(iv).

19         Pursuant to the undersigned's procedures for informal discovery dispute resolution, the

20  parties may stipulate to allow for the resolution of discovery disputes outside of the formal Local

21  Rule 251 procedures by conducting an informal telephonic conference.  Prior to conducting such

22  conference, the parties must agree to the informal process, agree to an entry of an order by the

23  Court after the conference, and agree to abide by such order.

24                                   **III.**

25                            **DISCUSSION**

26  **A.      The Discovery Sought is Relevant to the Claim for Punitive Damages**

27         "[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the

28  amount of punitive damages that should be awarded."  City of Newport v. Fact Concerts, Inc.,

453 U.S. 247, 270 (1981).  Such information need not be admissible to be discoverable for punitive damages claims.  See, e.g., Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 286 (C.D. Cal. 1998) ("The discovery of financial information relevant to a punitive damages claim is permissible under the Federal Rules of Civil Procedure, whether or not such evidence would be admissible at trial . . . one of the purposes behind the broad federal discovery rules is to facilitate settlement, and such financial information is valuable in assisting both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation.").

The parties are correct that the Ninth Circuit has not answered the question of whether a party must make a *prima facie* showing they are entitled to punitive damages prior to being allowed to obtain discovery regarding a defendant's financial information.  U.S. E.E.O.C. v. Giumarra Vineyards Corp., No. 1:09-CV-02255-AWI, 2012 WL 393333, at *2 (E.D. Cal. Feb. 6, 2012) ("Applicable law on this issue in this circuit is clearly unclear.").  Nonetheless, the majority of federal courts do not require a *prima facie* showing,[3] and in recent opinions, it appears the courts in this district, across California, and throughout the Ninth Circuit routinely follow the majority approach.  See, e.g., Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve, LLC, No. 1:14-CV-01445-JLT, 2016 WL 3538251, at *4 (E.D. Cal. June 29, 2016) (noting that although Ninth Circuit has not established precise parameters, "a majority of federal courts

---

[3] See, e.g., Vine v. PLS Fin. Servs., Inc., No. 4:18-CV-00450, 2020 WL 408983, at *7 (E.D. Tex. Jan. 24, 2020) (acknowledging that a majority of federal courts permit discovery of financial information without a *prima facie* showing on the issue of punitive damages); Morissette v. Cote Corp., No. 2:14-CV-00452-JDL, 2016 WL 6902116, at *2 (D. Me. Nov. 22, 2016) ("The practice in this court, consistent with that of a majority of federal courts addressing the issue, generally is to permit pretrial discovery of financial information without requiring a plaintiff to establish a *prima facie* case on the issue of punitive damages.") (citations omitted); United States v. Matusoff Rental Co., 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages.") (citations omitted); CEH, Inc. v. FV Seafarer, 153 F.R.D. 491, 498 (D.R.I. 1994) ("When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages.") (citations omitted).  The Court notes that in Zielke, the court noted that "[a]s argued by Defendant, a seemingly growing number of courts require a prima facie showing of entitlement to, or an evidentiary basis for the recovery of, punitive damages prior to allowing discovery of a defendant's financial status while other courts delay discovery altogether on punitive damages until after dispositive motions have been decided." Zielke v. Vision Hosp. Grp., Inc., No. 1:14-CV-362-SKL, 2015 WL 9876950, at *2 (E.D. Tenn. Nov. 3, 2015) (citations omitted).  However, the court went on to note that the majority of courts still hold no such *prima facie* showing is required and allowed the discovery finding no compelling reason to delay or limit it until such showing, particularly as it would be after the agreed upon deadlines in the scheduling order. Id. at *3.

permit discovery of financial information about the defendant without requiring [the] plaintiff to establish a *prima facie* case on the issue of damages.") (citations omitted); <u>L.S. v. Oliver</u>, No. 19CV746-JLS-LL, 2019 WL 4849174, at *3 (S.D. Cal. Oct. 1, 2019) (noting courts in the Southern District have repeatedly followed the majority approach that no *prima facie* showing is necessary); <u>Infoeuro Grp. v. Aetna Life Ins. Co.</u>, No. CV 16-5083 AB(JCX), 2018 WL 6975141, at *6 (C.D. Cal. Nov. 28, 2018) ("This Court elects to follow the majority practice" of not requiring a *prima facie* showing.); <u>Thomas v. Cassia Cty.</u>, No. 4:17-CV-00256-DCN, 2018 WL 2224052, at *3 (D. Idaho May 15, 2018) ("At this point, the Court finds it appropriate to follow the approach taken by the majority of federal courts."); <u>Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc. Moore</u>, No. CV 15-00245 ACK-KSC, 2017 WL 80248, at *7 (D. Haw. Jan. 9, 2017) (applying majority approach); <u>McCoy v. Holguin</u>, No. 115CV00768DADMJSPC, 2017 WL 4037944, at *6 (E.D. Cal. Sept. 13, 2017) (holding that "a majority of federal courts do not require the plaintiff to make a prima facie showing that punitive damages may be recovered [. . . and] [c]onsequently, the information Plaintiff seeks through these  discovery requests to determine Defendants' net worth is relevant and within the scope of discovery," however sustaining objections that the requests were vague and overbroad as to time span.); <u>McCoy v. Ramirez</u>, No. 113CV01808MJSPC, 2017 WL 1037611, at *4–5 (E.D. Cal. Mar. 16, 2017) (same); <u>McCall v. State Farm Mut. Auto. Ins. Co.</u>, No. 216CV01058JADGWF, 2017 WL 3174914, at *13 (D. Nev. July 26, 2017) (following the majority approach but limiting discovery because could be obtained through other less burdensome means).

While the Court has not performed an *exhaustive* search, the Court has not located any cases in the Ninth Circuit where the district court expressly followed the minority approach and required a *prima facie* showing, and the State Defendants have not cited to any such cases in their briefing.  Two cases from this district, one cited by State Defendants, highlight examples where the court declined to expressly endorse either the majority or minority approach, but found the discovery permissible under either standard in one instance, and not allowable for various reasons in another.

In the latter, <u>Giumarra</u>, cited by State Defendants, the court stated it was "not prepared to

declare one or the other of the above rules supreme," but held that "in this case, and this case alone, the Court feels it would be abdicating its responsibility were it to order disclosure of financial information **at this time** given the considerations discussed." <u>Giumarra Vineyards Corp.</u>, 2012 WL 393333, at *2 (emphasis in original). The court inquired of the intervenors "why they sought such financial information at this particular stage of the proceedings, two years into the case, two previously-set discovery deadlines dates having passed, and still more than six months pre-trial," and "asked if the Intervenors would be prejudiced if the discovery request were not acted on until closer to trial." <u>Id.</u> at *3. The intervenors responded "that they sought the information to assist in the settlement process." <u>Id.</u>

The court declined to grant the discovery because the goal of assisting in the settlement process, the only goal identified by the intervenors, had no apparent basis because: (1) the facts presented "militated against the likelihood of a substantial general damages award" and punitive damages "must meet a ratio of something less than ten to one relative to actual damages"; (2) "all parties recognize and agree that Defendant is a very large and successful farming enterprise, not capable of credibly resisting settlement by claiming an award could not be collected"; (3) the scope of the requests were overly broad in that they requested information on all of "Defendant's assets, liabilities, expenses, loans, loan payments, debts, taxes, income and bank accounts during the period from 2007 to the present"; and (4) "one of the counsel for Intervenors in this case is counsel for other Plaintiffs in similar actions [and] [a]ccording to defense counsel, these other clients are seeking information about Defendant's finances and business operations." <u>Id.</u> The court concluded they had not shown the existence of a valid claim justifying the discovery at the time, nor had they shown the information was "not sought for pretextual purposes." <u>Id.</u> The Court emphasized it did "not suggest an unethical motive," but as for the proffered reason for the discovery, whether defendant had the ability to satisfy judgment in order to aid settlement negotiations, there did "not seem to be any real question as to Defendant's ability in that regard, and "[a]lthough avoidance of having to disclose confidential financial information might in and of itself be an inducement to settle, use of that inducement would have scent of impropriety about it." <u>Id.</u>

The court in <u>Braun</u> found that although <u>Giumarra</u> "determined financial information need not be produced despite a claim for punitive damages, the facts of the case [were] distinguishable from those presently here." <u>E.E.O.C. v. Braun Elec. Co.</u>, No. 1:12-CV-01592-LJO, 2014 WL 356998, at *5 (E.D. Cal. Jan. 24, 2014). The Court went on to state "[i]n contrast, here the EEOC made its discovery request for Defendant's financial information well before the non-expert discovery deadline expired [. . .] Defendant has not asserted whether it could or could not satisfy a large judgment [and] the information sought by Plaintiff is narrower in scope." <u>Id.</u> (holding the financial information was within the scope of permissible discovery). The Court also noted that "[e]ven if the Court were to follow the minority approach, Braun makes no attempt to demonstrate why the facts set forth here do not constitute a prima facie case upon which punitive damages could be awarded," and if "Braun felt that the complaint was insufficient, the remedies under [Rule 12] were available." <u>Id.</u> at *6.

The Court finds no compelling reason to deviate from the majority approach here and thus finds the requested financial information is relevant to the claim for punitive damages and discoverable without a *prima facie* showing by Plaintiff. Unlike <u>Giumarra</u>, there is no confluence of factors that have been brought to the Court's attention that counsel against granting the requested discovery, and issues such as potential overbreadth are addressed below in this order, outside of the preliminary determination of relevance under the majority rule.[4]

///

---

[4] The State Defendants also cite the district court in Kansas for the proposition that Plaintiff must show the punitive damages claim is not spurious. <u>Roberts v. Shawnee Mission Ford, Inc.</u>, No. 01-2113-CM, 2002 WL 1162438, at *4 (D. Kan. Feb. 7, 2002) ("To discover a party's financial condition in light of a claim for punitive damages, requesting parties generally must show the claim for punitive damages is not spurious."). The Court finds this argument unavailing in light of the cases discussed above and the majority approach to this issue, and Defendants have not demonstrated the claims are spurious. The State Defendants also argue that to obtain discovery of the financial information, Plaintiff must satisfy a two-prong balancing test under <u>A. Farber & Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 191 (C.D. Cal. 2006). <u>Garber</u> involved the discovery of tax documents and noted the "public policy against unnecessary public discovery arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." <u>Id.</u> (citations omitted). The court stated a two-prong test is generally applied: (1) the documents must be relevant to the subject matter of the action; and (2) there must be a compelling need for the returns because the information contained therein is not otherwise readily obtainable. <u>Id.</u> (finding the documents discoverable subject to a protective order as they were relevant and defendant failed to even attempt to show the information was available elsewhere). Whether or not the Court must apply this two-factor test, the Court has already determined that the discovery is relevant to the issue of punitive damages, and the Court will address whether the information can be readily obtained from other sources further below in relation to Federal Rule of Civil Procedure 26(b).

### B.    Privacy Concerns can be Addressed by Protective Order

The State Defendants do not extensively argue the discovery requests would invade privacy rights but do state the "Ninth Circuit recognizes a public policy interest against unnecessary disclosure of personal financial information." (Br. 3, citing Aliotti v. Senora, 217 F.R.D. 496, 497 (N.D. Cal. 2003).)  They also state that producing such information "tramples on Defendants' right to privacy and that of their families." (Br. 4.)  Plaintiff states that the State Defendants did not raise any privacy objection in their objections to the discovery, and any privacy concerns would be sufficiently addressed by the protective order filed in this action (ECF No. 109). (Br. 2.)

The Court finds that the protective order is sufficient in this case.  See Braun Elec. Co., 2014 WL 356998, at *6 (in ordering discovery of financial information relating to punitive damages, finding privacy concerns may be addressed by a protective order); Bakersfield Pipe, 2016 WL 3538251, at *4–5 (same).  To the extent the parties, through the meet and confer discussed below, find the protective order insufficient to address concerns with the discovery in question, the Court is open to entering another or modified protective order.

### C.    Whether the Documents are Available from Other Sources

Federal Rule of Civil Procedure 26(b) mandates that the Court must "limit the frequency or extent of discovery otherwise allowed" if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  The State Defendants argue that because they are public employees, their salaries and reportable investments are equally and publicly available to Plaintiff by searching public salary databases and disclosure forms. (Br. 4.)  Plaintiff argues that the public salary databases are insufficient to adequately determine the breadth of the State Defendants' true financial condition.

As discussed at the teleconference, based on the Court's experience with punitive damages and the kinds of financial information that is publicly available, the Court does not find the publicly available information sufficiently covers the information sought or needed.  An incomplete financial picture can potentially act as a detriment to either Plaintiff or the State

1  Defendants in determining punitive damages. Accordingly, the Court does not find it must limit
2  the extent of the discovery as it cannot be readily obtained from other sources. However, in
3  making the request, Plaintiff must be mindful of the scope under Fed. R. Civ. P. Rule 26(b)(1).
4  Should an issue arise regarding the actual request, the Court will entertain further informal
5  discovery dispute requests.

6      **D.      Whether the Requests are Overbroad**

7          The State Defendants argue that if the Court grants the discovery, Plaintiff "must narrow
8  their requests for financial information to a period of two years." (Br. 4.) As discussed at the
9  teleconference, Plaintiff confirmed she is now only seeking information from the two-year
10 period, and thus the request is not temporally overbroad.

11         Aside from the argument that the requests are temporally overbroad, the State Defendants
12 have not submitted arguments in their briefing that the requests are overbroad in other regards.
13 Further, the text of the actual requests for production were not reproduced verbatim in the joint
14 letter brief for the Court to review. Accordingly, as discussed at the teleconference and given all
15 of the issues considered herein, the Court shall grant Plaintiff's request for an order compelling
16 production of the discovery in question, subject to the parties meeting and conferring regarding
17 narrowing the breadth of the financial information sought to only what is necessary.

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**IV.**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants Dolly Matteucci, Dana White, Patricia Tyler, Cindy Black, and Diane Mond, shall produce, on or before February 28, 2020,[5] documents responsive to Plaintiff's requests for production, set four, subject to further meet and confer regarding the precise scope and breadth of the type of documents covered by the request.

IT IS SO ORDERED.

Dated:    **February 7, 2020**    _____

UNITED STATES MAGISTRATE JUDGE

---

[5] The non-expert discovery deadline expires on February 28, 2020.