# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ATAYDE,<br><br>        Plaintiff,<br><br>    v.<br><br>NAPA STATE HOSPITAL, et al.,<br><br>        Defendants. | Case No. 1:16-cv-00398-DAD-SAB<br><br>ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER EXTENDING TIME TO FILE MOTION TO COMPEL<br><br>ORDER DENYING *EX PARTE* APPLICATION TO STRIKE DEFENSE<br><br>(ECF No. 188) |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff's *ex parte* application for an order extending the time to file a motion to compel the deposition of the State Defendants' person most knowledgeable and/or to strike the defense of lack of resources. (ECF No. 188.) Having considered the application, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order denying Plaintiff's *ex parte* application.

## II.

## BACKGROUND

**A.    Procedural History and Previous Modifications to Scheduling Order**

Plaintiff filed this action on January 5, 2016, bringing claims for violations of civil rights and wrongful death stemming from alleged deliberate indifference to medical and psychiatric

needs resulting in the suicide of Richard Ramirez in Merced County jail while he waited to be transferred to an inpatient psychiatric care facility. (ECF No. 1.) On March 21, 2016, the United States District Court for the Northern District of California granted a motion to change venue. (ECF No. 40.) On March 24, 2016, the case was transferred to this Court, the United States District Court for the Eastern District of California. (ECF No. 41.) On September 16, 2016, the Court granted the State Defendants' motion to dismiss, and granted in part the County Defendants' motion to dismiss. (ECF No. 63.)[1] Plaintiff filed a first amended complaint on October 7, 2016. (ECF No. 68.) On May 25, 2017, the Court granted in part and denied in part the County Defendants' and the State Defendants' motions to dismiss. (ECF No. 98.)

On June 30, 2017, the Court issued a scheduling order setting pretrial deadlines and the trial in this action, including a non-expert discovery deadline and non-dispositive motion filing deadline of March 16, 2018, a dispositive motion filing deadline of June 1, 2018, and a trial date of March 19, 2019. (ECF No. 102.) On January 17, 2018, pursuant to the stipulation of the parties, the Court issued an amended scheduling order extending the non-expert discovery deadline and non-dispositive motion filing deadline until September 1, 2018, the dispositive motion deadline until December 10, 2018, and setting a new trial date for September 24, 2019. (ECF No. 115.)

On June 21, 2018, the parties filed a stipulation to further amend the scheduling order. (ECF No. 118.) Due to the length of the extension requested by the parties, the Court held an informal teleconference on June 22, 2018, to address the request. (ECF Nos. 120, 121.) The parties were advised at the conference that the Court would be severely impacted in 2020 due to judicial retirements that would affect trials scheduled to occur in 2020. (ECF Nos. 121, 122.) Following the conference, on June 22, 2018, the Court issued an amended scheduling order, including a non-expert discovery deadline and non-dispositive motion filing deadline of July 19, 2019, a dispositive motion deadline of October 11, 2019, and a new trial date of June 23, 2020.

---

[1] Herein, "State Defendants" refers to Napa State Hospital and the individually named defendant employees of the State, "County Defendants" refers to Merced County and the individually named defendant employees of the County, and the "CFMG Defendants" refers to California Forensic Medical Group, Inc., and any individually named defendant employees of CFMG.

(ECF No. 122.)

On June 7, 2019, the Court granted in part Plaintiff's motion to file an amended complaint, and on June 11, 2019, Plaintiff filed a second amended complaint, the operative complaint in this action. (ECF Nos. 147, 148.) On June 18, 2019, pursuant to the stipulation of the parties, the Court again amended the scheduling order extending the non-expert discovery deadline until October 18, 2019, and a non-dispositive motion filing deadline of November 1, 2019, the first time it differed from the date of the non-expert discovery deadline. (ECF No. 150.) The trial date was not changed. (Id.) On August 8, 2019, the Court issued an order to correct a typographical error in the previous order, clarifying that the new dispositive motion deadline was January 10, 2020. (ECF No. 161.)

On September 20, 2019, Plaintiff, the County Defendants, and the CFMG Defendants, jointly filed a motion to amend the scheduling order, and an *ex parte* application to shorten the time to hear the motion to amend. (ECF Nos. 163, 164.) No Defendant filed an opposition, and on October 2, 2019, the Court granted the motion, and extended the non-expert discovery deadline until November 22, 2019, the non-dispositive motion filing deadline until December 20, 2019, the dispositive motion deadline until March 6, 2020, and set a new trial date for August 18, 2020. (ECF No. 167.)

On November 4, 2019, the Court once again modified the scheduling order pursuant to the parties' stipulation, and set the non-expert discovery deadline for January 10, 2020, and the dispositive motion deadline for March 27, 2020. (ECF No. 170.) The stipulation nor order addressed the non-dispositive motion filing deadline. (ECF Nos. 169, 170.)

On January 2, 2020, pursuant to parties' stipulation, the Court again modified the scheduling order and set the non-expert discovery deadline for February 28, 2020, the dispositive motion deadline for May 1, 2020, and a trial date of February 9, 2021. (ECF No. 178.) The stipulation nor the order addressed the non-dispositive motion filing deadline. (ECF Nos. 177, 178.) The Court denied the parties' request to conduct certain financial discovery and the deposition of Defendant CFMG's person most knowledgeable within two months, and one month before trial, respectively, because the Court found such proposed arrangement was

contrary to the scheduling order, and disputes over such discovery would be not be able to be addressed prior to the pretrial conference and start of trial. (ECF No. 178 at 1-2.) The Court also forewarned the parties that no further stipulations would be entered without a noticed motion setting forth good cause not already articulated. (Id. at 2.)

Plaintiff and the CFMG Defendants then filed a stipulation that indicated while they disagreed over whether Plaintiff was entitled to discovery of financial condition information prior to establishing liability for punitive damages, the parties agreed to postpone the CFMG Defendants' responses until the earlier of October 1, 2020, or the Court's ruling on motions for summary judgment, and then afford Plaintiff forty-five (45) days to complete financial condition depositions. (ECF No. 179.) On January 9, 2020, the Court denied the stipulated request because first, the parties did not submit a noticed motion and instead filed a stipulation in contravention of the Court's January 2, 2020 order, and second, because the parties' dispute over the discoverability of financial condition information did not present good cause to deviate from the scheduling order and standard discovery procedures prior to trial. (ECF No. 180.)

In response to the Court's January 9, 2020 denial, the parties scheduled an informal discovery dispute conference before the undersigned regarding the discoverability of Defendants' financial information prior to Plaintiff establishing a *prima facie* case of entitlement to punitive damages. (ECF No. 181, 183.) On February 7, 2020, the Court held the informal conference with the parties and granted Plaintiff's request for an order compelling the production of the financial information. (ECF Nos. 184, 185.) Defendants filed a motion for reconsideration of the Court's February 7, 2020 order, which is still pending before the District Judge. (ECF Nos. 186, 187.)

On February 28, 2020, Plaintiff filed an *ex parte* application for an order extending the time to file a motion to compel the depositions of the State Defendants' person most knowledgeable and/or strike the defense of lack of resources. (ECF No. 188.) For the reasons discussed herein, Plaintiff's *ex parte* application shall be denied.

///

///

# III.
# LEGAL STANDARD

## A. *Ex Parte* Applications

Local Rule 144(a) provides that aside from certain express initial extensions, "[a]ll other extensions of time must be approved by the Court." L.R. 144(a). Local Rule 144(c) provides that the Court may, in its discretion, grant an initial *ex parte* extension "upon the affidavit of counsel that a stipulation extending time cannot reasonably be obtained, explaining the reasons why such a stipulation cannot be obtained and the reasons why the extension is necessary." L.R. 144(c). Except for one initial extension, such "applications for extension of time are not ordinarily granted." L.R. 144(c). Further, "[c]ounsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent," and "[r]equests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor." L.R. 144(d).

## B. Modification of the Scheduling Order

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The "good cause" standard "primarily considers the diligence of the party seeking the amendment," and the Court "may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (internal citation and quotations omitted). The prejudice to parties opposing modification of the scheduling order, if any, may provide additional grounds for denying the motion, but the focus is on the moving party's reason for seeking the modification. Id. If the party seeking to amend the scheduling order "was not diligent, the inquiry should end," and the court should not grant the motion to modify. Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Mammoth Recreations, 975 F.2d at 609). "Relevant inquiries [into diligence] include: whether the movant was diligent

in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." United States ex rel. Terry v. Wasatch Advantage Grp., LLC, 327 F.R.D. 395, 404 (E.D. Cal. 2018) (internal quotation marks and citation omitted) (alteration in original).

## IV.

## DISCUSSION

### A. The Movants' Arguments in Favor of Amending the Scheduling Order

Pursuant to Local Rule 144(c), Plaintiff submits an *ex parte* application for an order to extend time to file a motion to compel the deposition of the State Defendants' person most knowledgeable and/or strike the defense of lack of resources. (Pl's *Ex Parte* Appl. Order Extending Time File Mot. Compel or Strike Defense ("Appl."), ECF No. 188.) Relevant to the discovery at issue, Plaintiff first highlights this action involves allegations that the State Defendants were deliberately indifferent to the rights and safety of inmate Richard Ramirez ("Ramirez") by: (1) failing or refusing to admit him when he was ordered committed to Napa State Hospital ("NSH") in accordance with Merced County Superior Court's commitment order; (2) requiring Ramirez to wait over seven weeks after being committed to NSH; (3) refusing to triage or review Ramirez's psychiatric acuity before placing him on the waiting list; and (4) refusing to inform the state court, district attorney, defense counsel, or next of kin, of the delay in admitting him to NSH or the ability to request psychiatric acuity review. (Appl. 2.) Plaintiff argues that by refusing to allow admission to NSH, the State Defendants caused Ramirez to remain incarcerated in the jail after the criminal charges had been suspended, without appropriate psychiatric treatment, ultimately causing his suicide. (Id.)

Plaintiff proffers that due to the State Defendants' failure to timely admit IST inmates to state hospitals in accordance with commitment orders, courts around California state have issued orders to show cause to Department of State Hospital ("DSH") officials to show cause why they should not be held in contempt of court for violating the commitment orders. (Appl. 3.) Plaintiff proffers that since 2014, the State has received thousands of orders to show cause for the failure

to admit IST patients. (Decl. Michael J. Haddad ("Haddad Decl.") ¶ 3, ECF No. 188-1.) In response, "at substantial cost, DSH sends NSH officials, such as Defendants White, Mond, Dr. Tyler, and other high ranking officials around the state" to respond to the orders to show cause. (Appl. 3.) Plaintiff contends that these costs, in addition to the costs to the state courts and staff in prosecuting and defending the orders to show cause, are all costs that the State could be redirecting to triaging IST inmates on waiting lists, hiring two or three more psychiatrists to do psychiatric acuity reviews, or opening more hospital beds for IST inmates. (Id.) Plaintiff argues that it "is apparent that the cost of the State Defendants choosing to do business as usual is hundreds, or thousands, of additional OSC's around the state, which directly contradicts their defense that they lacked resources to respect IST inmates' constitutional rights," and that "money spent on defending OSC's for violating state court commitment orders could have been used by Defendants to provide a constitutional level of care for IST inmates ordered to their care." (Appl. 3.)

To attempt to quantify the costs to the State in responding to the OSC's, on January 31, 2020, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff served a deposition notice on the State Defendants seeking to depose the State of California's PMK regarding the total yearly cost to the State from OSC's related to delayed admissions of IST patients to State hospitals for each year from July 1, 2013, noticed for February 20, 2020. (Appl. 3; Haddad Decl. ¶ 4; Ex. B, ECF No. 188-1 at 6.) On February 6, 2020, the State Defendants served an objection to the deposition notice on the grounds that "this information is not tracked; therefore, no Person Most Knowledgeable on this topic can be produced." (Appl. 3; Haddad Decl. ¶ 5.) On February 11, 2020, Plaintiff's counsel requested to meet and confer with counsel for the State Defendants, regarding the deposition. (Appl. 4; Decl. Julia Sherwin ("Sherwin Decl.") ¶ 3, ECF No. 188-2.) On February 14, 2020, Plaintiff's counsel Michael Haddad and defense counsel Amie McTavish telephonically met and conferred, and Mr. Haddad explained that the PMK should be a witness that can describe how OSC costs are calculated, and if they are not calculated, the relevant factors that would be considered in assessing such costs. (Appl. 4.) Plaintiff states that Ms. McTavish agreed she would find a witness, and counsel agreed that one of the only dates both

sides were available to do the deposition was February 28, 2020, the deadline for non-expert discovery to be completed. (Appl. 4.) Based on Ms. McTavish's representation, on that same day, Plaintiff served an amended notice rescheduling the PMK deposition for February 28, 2020. (Appl. 4; Haddad Decl. ¶ 6.)

On February 25, 2020, Ms. McTavish informed Plaintiff's counsel that she was still searching for a PMK to produce. (Appl. 4; Sherwin Decl. ¶ 4.) That same day, Mr. Haddad emailed Ms. McTavish to confirm the deposition, and on 4:42 p.m., "without giving an explanation, Ms. McTavish responded, 'We cannot produce a PMK on these issues. The deposition will not go forward.'" (Appl. 4.) Ms. McTavish further informed Mr. Haddad that the State Defendants would not agree to an informal discovery dispute procedure to address this matter. (Appl. 4; Haddad Decl. ¶ 7.) Plaintiff highlights that the State Defendants have never moved for, nor received, a protective order on this issue of the deposition. (Appl. 4.)

Plaintiff argues the State Defendants have a duty to produce a PMK witness pursuant to the deposition notice, Fed. R. Civ. P. 30(b)(6); R.D.G. v. City of Bakersfield, No. 1:13-CV-02057-JLT, 2015 WL 3454503, at *2 (E.D. Cal. May 29, 2015). Plaintiff argues the responding party cannot simply refuse to attend a deposition because it finds the 30(b)(6) notice objectionable, and must either appear or bring a timely motion for a protective order, Fed. R. Civ. P. 37(d)(2), which the State Defendants have not. (Appl. 4-5.) Plaintiff seeks to bring a motion to compel the deposition of the PMK under Local Rule 251, however, highlights that on November 4, 2019, pursuant to the parties' stipulation, the Court extended the deadlines for non-expert discovery, expert discovery, and the dispositive motion deadline, but "[d]ue to the parties' inadvertence, the non-dispositive motion filing deadline was not included in the stipulation, and therefore remained as December 20, 2019 pursuant to the previous scheduling order." (Appl. 5; ECF No. 167, 170.) Plaintiff states that had the parties included the non-dispositive motion filing deadline in the stipulation, the parties would have likely requested to have the non-dispositive motion filing deadline extended to a date after the close of discovery, but "[a]s it stands now, the non-dispositive motion filing deadline was December 20, 2019, while the fact discovery deadline is February 28, 2020 – obviously an inappropriate motion deadline so far

before the close of discovery." (Appl. 5.)

Prior to the filing of the current application, Plaintiff proposed stipulating to a brief extension of time to file a joint discovery motion, but without providing a reason, the State Defendants refused such offer. (Appl. 5; Haddad Decl. ¶ 8.) Plaintiff argues that "[t]ime is of the essence in this matter because the State Defendants have circumvented Plaintiff's opportunity to challenge one of their key defenses," and "[i]f an extension of the non-dispositive motion filing deadline is not granted, Plaintiff will be unable to challenge the State Defendant's refusal to produce a PMK for deposition. (Appl. 5.) Such result "would be contrary to Federal Rule of Civil Procedure 1 – requiring that the Rules are intended 'to secure justice' – to permit the State Defendants to blatantly violate discovery rules, refusing to produce a relevant witness with no protective order, simply because the parties inadvertently failed to seek extension of the non-dispositive motion filing deadline along with all of the others." (Appl. 5.)

Finally, Plaintiff emphasizes that "the trial date is not an issue, as Judge Drozd had informed the parties that it is unlikely any civil case will be tried in 2020 or 2021" (Appl. 5.)

### B. Plaintiff has not Demonstrated Good Cause for the Modification of the Scheduling Order

This case has been ongoing for over four years and the scheduling order has been amended six times. Specifically, the action was filed on January 5, 2016, and following motions to dismiss and numerous continuances of the initial scheduling conference, on June 30, 2017, the Court first set the non-expert discovery deadline for March 16, 2018. (ECF No. 1, 102.) Since the initial scheduling order issued, the non-expert deadline in this matter has been extended six times: January 17, 2018 (ECF No. 115), June 22, 2018 (ECF No. 122), June 18, 2019 (ECF No. 150), October 2, 2019 (ECF No. 167), November 4, 2019 (ECF No. 170), and January 2, 2020 (ECF No. 178).

One of Plaintiff's primary arguments in favor of modifying the scheduling order is that when the Court granted the stipulation to modify the scheduling order on November 4, 2019, the Court extended the deadlines for non-expert discovery, expert discovery, and the dispositive motion deadline, but "[d]ue to the parties' inadvertence, the non-dispositive motion filing

9

deadline was not included in the stipulation, and therefore remained as December 20, 2019 pursuant to the previous scheduling order." (Appl. 5; ECF No. 167, 170.) Plaintiff argues that had the parties included the non-dispositive motion filing deadline in the stipulation, the parties would have likely requested to have the non-dispositive motion filing deadline extended to a date after the close of discovery. (Appl. 5.)

First, the Court notes that the non-dispositive motion filing deadline has repeatedly been set on the same date as the non-expert discovery deadline in this matter. The initial scheduling order set both the non-expert discovery deadline and the non-dispositive motion filing deadline for March 16, 2018. (ECF No. 102.) The first modification to the scheduling order entered on January 17, 2018, set the non-expert discovery deadline and the non-dispositive motion filing deadline for the same date: September 1, 2018. (ECF No. 115.) The next modification on June 22, 2018, also set the same deadline for both the non-dispositive motion filing deadline and the non-expert discovery deadline: July 19, 2019. (ECF No. 122.)

On June 18, 2019, the Court entered a modification that for the first time set a different date for the non-dispositive motion filing deadline, November 1, 2019, but it was only two weeks after the new non-expert discovery deadline of October 18, 2019. (ECF No. 150.) On October 2, 2019, the Court granted a motion to modify the scheduling order and set the non-expert discovery deadline for November 22, 2019, and the non-dispositive motion filing deadline for approximately a month later, December 20, 2019. (ECF No. 167.) Plaintiff correctly highlights that the next modification granted on November 4, 2019, extended the non-expert discovery deadline until January 10, 2020, but the stipulation nor the order addressed any non-dispositive motion filing deadline. (ECF Nos. 169, 170.) Additionally, the modification granted on January 2, 2020, extended the non-expert discovery deadline until February 28, 2020, but the stipulation nor the order addressed extending the non-dispositive motion filing deadline. (ECF Nos. 177, 178.)

First, although the modifications entered on June 18, 2019, and October 2, 2019, set different respective deadlines for non-expert discovery and non-dispositive motions, given the first scheduling order and the first two modifications set the same deadline for the close of non-

10

expert discovery and for the filing of non-dispositive motions, the Court is not persuaded the modifications entered on November 4, 2019, and January 2, 2020, would have set a non-dispositive motion filing deadline that was greatly different from the non-expert discovery deadline had the parties more carefully crafted the stipulations presented to the Court. However, more significantly, Plaintiff's argument is largely irrelevant to the issue at hand as even if the non-dispositive motion filing deadline was extended to a date after the close of non-expert discovery, it is the non-expert discovery deadline that would control whether any motion to compel non-expert discovery was timely, not the non-dispositive motion filing deadline.

The Court's initial scheduling order, issued on June 30, 2017, notified and informed the parties of the following guidelines governing motions to compel discovery in relation to the relevant discovery deadline:

> The parties are cautioned that the discovery/expert cut-off deadlines are the dates by which all discovery must be completed. Absent good cause, discovery motions will not be heard after the discovery deadlines. Moreover, absent good cause, the Court will only grant relief on a discovery motion if the relief requested requires the parties to act before the expiration of the relevant discovery deadline. In other words, discovery requests and deposition notices must be served sufficiently in advance of the discovery deadlines to permit time for a response, time to meet and confer, time to prepare, file and hear a motion to compel and time to obtain relief on a motion to compel. Counsel are expected to take these contingencies into account when proposing discovery deadlines. Compliance with these discovery cutoffs requires motions to compel be filed *and heard* sufficiently in advance of the discovery cutoff so that the Court may grant effective relief within the allotted discovery time. A party's failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff may result in denial of the motion as untimely.

(ECF No. 102 at 3-4 (emphasis in original).) The scheduling order further stated, under the heading "Non-Dispositive Pre-Trial Motions," that:

> As noted, all non-expert discovery, including motions to compel, shall be completed no later than **March 16, 2018**. All expert discovery, including motions to compel, shall be completed no later than **May 18, 2018**. Compliance with these discovery cutoffs requires motions to compel be filed *and heard* sufficiently in advance of the discovery cutoff so that the Court may grant effective relief within the allotted discovery time. A party's failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff may result in denial of the motion as untimely. Non-dispositive motions are heard on Wednesdays at 10:00 a.m., before United States Magistrate Judge Stanley A. Boone in Courtroom 9.
>
> In scheduling any non-dispositive motion, the Magistrate Judge may grant Applications for an Order Shortening Time pursuant to Local Rule 144(e). However, if counsel does not obtain an Order Shortening Time, the Notice of

Motion must comply with Local Rule 251.

(ECF No. 102 at 4 (emphasis in original).)

Thus, absent sufficient good cause, the motion to compel that Plaintiff wishes to file should have been filed and heard sufficiently in advance of the non-expert discovery cutoff so that the Court could have granted effective relief prior to the close of the non-expert discovery deadline. As stated in the scheduling order, "[i]n other words, discovery requests and deposition notices must be served sufficiently in advance of the discovery deadlines to permit time for a response, time to meet and confer, time to prepare, file and hear a motion to compel and time to obtain relief on a motion to compel." (ECF No. 102 at 3.) Plaintiff's *ex parte* application filed on February 28, 2020, the day the non-expert deadline expired, does not demonstrate good cause to deviate from the terms of the scheduling order governing procedures for filing discovery motions well in advance of the discovery deadline. See Mammoth Recreations, 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (internal citation and quotations omitted).

Although Plaintiff's application moves to modify the non-dispositive motion filing deadline, the relevant deadline is the non-expert discovery deadline, and Plaintiff similarly has not demonstrated good cause to further modify, for the seventh time in this action, the non-expert discovery deadline. See Mammoth Recreations, 975 F.2d at 609 (the good cause standard primarily considers the diligence of the party seeking the amendment); Wasatch Advantage Grp., LLC, 327 F.R.D. at 404 ("Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent."). Relevant to this inquiry is the fact that Plaintiff's attached exhibit demonstrates that Plaintiff was aware of the number of orders to show cause issued in California at least as early as October 8, 2019. (Haddad Decl. ¶ 3, Ex. A, ECF No. 188-1 at 5.) The non-expert discovery deadline was amended one week before that date on October 2, 2019 (ECF No. 167), and twice following that date on November 4, 2019 (ECF No. 170), and January 2, 2020

(ECF No. 178). While the PMK deposition that occurred on January 29, 2020, may have provided additional information (or lack of information) regarding the subject, the Court cannot discern any reason why the topic of the yearly cost of the OSC's could not have been included in the deposition notice for the January 29, 2020 deposition, given the deposition was of the PMK "regarding the number of Orders to Show Cause for disobeying a court order," (Haddad Decl. ¶¶ 3-4), which would have then allowed additional time to meet and confer on whether a witness could testify to such information, and time for a potential motion to compel. Plaintiff has not demonstrated sufficient diligence to establish good cause to modify the scheduling order yet again.

Finally, while Plaintiff highlights that due to the impacted nature of the Eastern District's Fresno courthouse, it is unlikely that civil trials will go forward in 2020 or 2021, such fact is not compelling nor establishes good cause to deviate from the deadlines or standards set forth in the scheduling order. Again, the non-expert deadline has been extended six times previously in this action. This case has been on the Court's docket for over four years, and although the Court is warning parties in an abundance of caution that civil trials are not expected to move forward, such an older action would be more likely to advance to trial if the Court is able to. Further, it is not outside the realm of possibility that a new district judge may in fact join the Court and may allow for the trial date to move forward as scheduled, or may allow for a shorter continuance than currently foreseeable.

### C. Plaintiff's *Ex Parte* Application to Strike Defense

Plaintiff's *ex parte* application seeks alternative relief by requesting that the Court strike Defendants' defense based on lack of resources. Based on the same reasons in the foregoing analysis pertaining to modifying the scheduling order, the Court shall deny Plaintiff's request to strike any defense at this time. Such ruling is without prejudice to Plaintiff renewing such request *in limine* or in another appropriate noticed motion, such as in relation to a motion for summary judgment, subject to Federal Rule of Civil Procedure 11.[2]

---

[2] An additional reason for denying the *ex parte* application as to both the request to modify the scheduling order and the request to strike, is that Plaintiff failed to make a showing of good cause for why this matter needed to be heard

## V.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's *ex parte* application for an order extending the time to file a motion to compel the deposition of the State Defendants' person most knowledgeable and/or strike defense (ECF No. 188) is DENIED.

IT IS SO ORDERED.

Dated: __March 3, 2020__

UNITED STATES MAGISTRATE JUDGE

---

on an *ex parte* basis rather than through a noticed motion. See Manpower Inc. v. Slingshot Connections LLC, No. 2:12-CV-01069 JAM, 2012 WL 3561974, at *2 (E.D. Cal. Aug. 17, 2012) ("The undersigned denies plaintiff's *ex parte* request on two separate grounds. First, plaintiff has not made a showing of good cause for this matter to be heard on an *ex parte* basis, as opposed to a motion noticed consistent with Local Rule 251. Plaintiff has not shown that its cause would be irreparably harmed were it not permitted to bypass the court's normal discovery motion procedures [. . .] Second, the undersigned denies plaintiff's *ex parte* application on the grounds that plaintiff failed to show good cause to permit expedited discovery.").