UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ATAYDE, individually and as successor in interest of decedent RICHARD MICHAEL RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>NAPA STATE HOSPITAL, et al.,<br><br>Defendants. | No. 1:16-cv-00398-DAD-SAB<br><br>ORDER DENYING REQUESTS FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S FEBRUARY 7, 2020 ORDER AND MARCH 4, 2020 ORDER<br><br>(Doc. Nos. 186, 191) |

This matter is before the court on two requests for reconsideration of discovery-related orders: (1) defendants Dolly Matteucci, Dana White, Cindy Black, Diane Mond, and Patricia Tyler's ("the individual defendants") request for reconsideration of the assigned magistrate judge's discovery order of February 7, 2020 (Doc. No. 185) compelling the production of documents regarding the individual defendants' financial condition (Doc. No. 186); and (2) plaintiff's request for reconsideration of the magistrate judge's order of March 4, 2020 (Doc. No. 189) denying plaintiff's *ex parte* application for an order extending the time to file a motion to compel a deposition of the person most knowledgeable for defendants Napa State Hospital ("NSH") and State of California Department of State Hospitals ("DSH") (collectively, "the state defendants") and a motion to strike the state defendants' defense of lack of resources. (Doc. No. 191.)

# BACKGROUND

The factual allegations giving rise to this case have been laid out in detail in a prior order and need not be repeated in full here. *See Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 984–86 (E.D. Cal. 2017). In short, this lawsuit arises from the suicide of Richard Ramirez, which occurred in Merced County Jail while he waited to be transferred to Napa State Hospital after he had been found incompetent to stand trial due to severe psychosis. *See id*. at 985. Relevant here, in this action plaintiff seeks punitive damages against the individual defendants based on her claims under 42 U.S.C. § 1983 for deliberate indifference in the provision of medical care and for failure to provide timely restorative treatment in violation of the decedent's Fourteenth Amendment rights, as well as under California's Bane Act, California Civil Code § 52.1. (Doc. No. 148.) Plaintiff also brings claims against the state defendants under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") for failure to accommodate, to which they have asserted a defense of lack of adequate resources. (*Id*.; Doc. No. 188 at 2.)

# LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may be referred to and decided by a magistrate judge, subject to review by the assigned district judge. Fed. R. Civ. P. 72 (a); *see also* L.R. 303(c). The district judge shall modify or set aside any part of the magistrate judge's order which is "found to be clearly erroneous or contrary to law." L.R. 303(f); *see also* 28 U.S.C. § 636(b)(1)(A). Discovery motions are non-dispositive pretrial motions which come within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A). Thus, the orders of a magistrate judge addressing discovery motions are subject to the "clearly erroneous or contrary to law" standard of review. *Rockwell Intern., Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983). The magistrate judge's factual determinations are reviewed for clear error, while legal conclusions are reviewed to determine whether they are contrary to law. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984), *overruled on other grounds by Estate of Merchant v. CIR*, 947 F.2d 1390 (9th Cir. 1991). "A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [the] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of

procedure." *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted); *see also Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).

**ANALYSIS**

The court will separately address each of the pending requests for reconsideration below.

**A.   Magistrate Judge's February 7, 2020 Order**

On February 5, 2020, the parties submitted a joint informal discovery dispute letter brief to the magistrate judge for resolution of their dispute over whether the individual defendants must produce documents regarding their financial condition, which plaintiff requested in support of her claims for punitive damages. (Doc. No. 183.) Plaintiff's position was that the individual defendants' financial information is relevant to her punitive damages claims, their financial documents are not available from any other source, and any privacy concerns would be adequately addressed by the protective order entered in this case. (*Id*. at 1–2.) The individual defendants objected to plaintiff's requests as overbroad, not relevant, and unduly burdensome, and they argued that their financial information is not discoverable in light of public policy interests against unnecessary disclosure of personal financial information and because plaintiff had not yet made a *prima facie* showing of entitlement to punitive damages. (*Id*. at 3–4.)

Following an informal hearing held on February 7, 2020, the magistrate judge issued an order resolving this dispute in plaintiff's favor and ordering the individual defendants to produce the requested financial documents, "subject to further meet and confer regarding the precise scope and breadth of the type of documents covered by the request." (Doc. No. 185 at 11.) In that order, the magistrate judge recognized that "the Ninth Circuit has not answered the question of whether a party must make a *prima facie* showing [that] they are entitled to punitive damages prior to being allowed to obtain discovery regarding a defendant's financial information." (Doc. No. 185 at 5.) The magistrate judge then discussed at length the approaches taken in addressing

this discovery issue by federal courts within this circuit and others, noting that a majority of federal courts do not require plaintiffs to make a *prima facie* showing of entitlement to punitive damages before allowing discovery of defendants' financial information. (*Id*. at 5–8.) The magistrate judge explained that "[w]hile the Court has not performed an *exhaustive* search, the Court has not located any cases in the Ninth Circuit where the district court expressly followed the minority approach and required a *prima facie* showing, and the [individual] State Defendants have not cited to any such cases in their briefing." (*Id*. at 6.) Accordingly, the magistrate judge found "no compelling reason to deviate from the majority approach" and concluded that "the requested financial information is relevant to the claim for punitive damages and discoverable without a *prima facie* showing by Plaintiff."[1] (*Id*. at 8.)

On February 21, 2020, the individual defendants filed the pending request for reconsideration by the undersigned of the magistrate judge's February 7, 2020 order. (Doc. No. 186.) Plaintiff filed an opposition on February 27, 2020. (Doc. No. 187.) The individual defendants filed a reply on March 5, 2020. (Doc. No. 190.)

Notably absent from the individual defendants' pending request for reconsideration is any argument that the magistrate judge's order is contrary to law or clearly erroneous. In fact, the individual defendants do not argue that the magistrate judge applied an incorrect legal standard, failed to consider an element of the applicable standard, or failed to apply the relevant statutes, case law, or rules of procedure. *See Martin*, 2014 WL 3563312, at *1. Nor do the individual

---

[1] Regarding the individual defendants' other objections, the magistrate judge concluded that plaintiff's discovery requests were not temporally overbroad because plaintiff agreed to limit the relevant time period for the requests to 2018 to the present. (*Id*. at 10.) To the extent the individual defendants had privacy concerns, the magistrate judge found the protective order entered in this case to be sufficient to address those concerns. (*Id*. at 9.) In addition, the magistrate judge was not persuaded by defendants' argument that the requests were burdensome because the requested information could be obtained from other sources—i.e., that because the individual defendants are public employees, their salaries and reportable investments are equally and publicly available to plaintiff by searching public salary databases and disclosure forms. (*Id*.) Based on his "experience with punitive damages and the kinds of financial information that is publicly available," the magistrate judge did "not find the publicly available information sufficiently covers the information sought or needed" by plaintiff and expressed concern that "[a]n incomplete financial picture can potentially act as a detriment" to either side in determining punitive damages. (*Id*. at 9–10.)

defendants point to any purported errors in the magistrate judge's analysis. Instead, the individual defendants simply object to the magistrate judge's conclusion—that they must produce documents regarding their financial condition—as troublesome because it raises serious public policy concerns. (Doc. No. 186 at 8, 10.) Essentially, the individual defendants believe that because they are public employees and they had no personal involvement in decisions regarding decedent's commitment to the state hospital, the magistrate judge should have made an exception; that is, plaintiff should have been required to first make a *prima facie* showing that the individual defendants had the requisite intent for her punitive damages claim to be successful, or to wait until her claims survive summary judgment, before requiring the individual defendants to produce the requested financial condition documents. (*Id*. at 8–10.) According to the individual defendants, allowing the magistrate judge's discovery order to stand would have a chilling effect on public service. (*Id*. at 11.) But the individual defendants do not cite any supporting case law or legal authority, and in fact state that there is no case on point addressing "the issue of punitive damages discovery against a public employee versus a private employee when the claims arise out of their employment rather than private acts or omissions." (*Id*. at 10.)

The undersigned has reviewed the magistrate judge's February 7, 2020 order and finds the order to be supported by applicable law and to certainly not be clearly erroneous. The magistrate judge's determination that plaintiff was not required to make a *prima facie* showing or to survive dispositive motions before seeking financial condition discovery is not contrary to law; indeed, it is consistent with the approach taken by a majority of federal courts, including courts from within this district, who have addressed this issue. (*See* Doc. No. 185 (discussing cases).) The magistrate judge's order is supported by the ample legal authority cited therein, and the individual defendants have not persuaded the undersigned that a mistake has been made in this regard. *See Concrete Pipe & Prod. of Cal.*, 508 U.S. at 623. Even if the magistrate's order may have broader public policy consequences—and it is not clear to the undersigned that it would—the court does not find that potential impact to be a sufficient basis upon which to overturn an order when applying the highly-deferential, "clearly erroneous" standard. *See* Fed. R. Civ. P. 72 (a); *see also*

/////

28 U.S.C. § 636(b)(1)(A); L.R. 303(f).  This is particularly true where, as here, there is a protective order in place that addresses any of the individual defendants' privacy concerns.

Accordingly, the individual defendants' request for reconsideration of the magistrate judge's discovery order of February 7, 2020 will be denied.

**B.     Magistrate Judge's March 4, 2020 Order**

On February 28, 2020, plaintiff filed an *ex parte* application for an order extending the time in which to file a motion to compel a deposition of the state defendants' person most knowledgeable ("PMK") and/or to strike their defense of lack of resources.[2]  (Doc. No. 188.)  To rebut the state defendants' defense that they lacked adequate resources, plaintiff noticed the deposition of the state defendants' PMK regarding the total yearly cost to the state from orders to show cause related to delayed admissions of IST patients to state hospitals since 2013.  (*Id*.)  The PMK deposition was noticed for February 20, 2020.  (*Id*. at 3, 5.)  On February 6, 2020, the state defendants objected to the PMK deposition on the grounds that "this information is not tracked; therefore, no Person Most Knowledgeable on this topic can be produced."  (*Id*. at 3.)  Following meet and confer efforts, plaintiff served an amended notice rescheduling the PMK deposition for February 28, 2020.  (*Id*. at 4.)  On February 25, 2020, the state defendants notified plaintiff that they could not produce a PMK witness on that topic and that the deposition would not go forward.  (*Id*.)  Plaintiff could not move to compel the PMK deposition because the deadline for

/////

/////

---

[2]  Plaintiff contends that the state defendants "have alleged that budgetary constraints and lack of resources have prevented them from timely admitting [incompetent to stand trial "IST"] patients or providing reasonable triage of IST patients to admit the most psychiatrically acute first."  (Doc. No. at 2.)  But, according to plaintiff, the state defendants have incurred substantial cost responding to thousands of orders to show cause ("OSCs") that courts throughout the state have issued requiring DSH officials to show cause why they should not be held in contempt of court for violating commitment orders and by failing to timely admit IST patients to state hospitals.  (*Id*. at 3.)  Plaintiff asserts "that the cost of the State Defendants choosing to do business as usual is hundreds, or thousands, of additional OSCs around the state, which directly contradicts their defense that they lacked resources to respect IST inmates' constitutional rights" and "that money spent on defending OSCs for violating state court commitment orders could have been used by Defendants to provide a constitutional level of care for IST inmates ordered to their care."  (*Id*.)

filing non-dispositive motions was December 20, 2019.³ (*Id*. at 5.)  Because the state defendants would not agree to a proposed stipulation for an extension of time allowing plaintiff to file a motion to compel, plaintiff filed an *ex parte* application on February 28, 2020 to extend the deadline. (*Id*.)

In her *ex parte* application, plaintiff requested an extension of the deadline for filing non-dispositive motions to March 16, 2020, or alternatively, that plaintiff be permitted to file a motion to compel and/or strike defenses by March 16, 2020. (*Id*. at 5–6.) Plaintiff asserted that "[t]ime is of the essence" because the state defendants "circumvented Plaintiff's opportunity to challenge one of their key defenses." (*Id*. at 5.) Plaintiff argued that it would be contrary to the Federal Rules of Civil Procedure, which are intended "to secure justice," for the court to "permit the State Defendants to blatantly violate discovery rules, [by] refusing to produce a relevant witness with no protective order, simply because the parties all inadvertently failed to seek extension of the non-dispositive motion filing deadline" when they stipulated to extend other deadlines. (*Id*.) Moreover, according to plaintiff, "the trial date is not an issue, as Judge Drozd had informed the parties that it is unlikely any civil case will be tried in 2020 or 2021." (*Id*.) (citing Doc. No. 182, Standing Order regarding Judicial Emergency).

The state defendants did not file a response to plaintiff's *ex parte* application.

On March 4, 2020, the magistrate judge issued an order denying plaintiff's *ex parte* application because the scheduling order had already been amended six times, and plaintiff had not demonstrated sufficient due diligence to establish good cause to further modify the scheduling

/////

/////

/////

/////

---

³ Plaintiff contends that the operative scheduling order was amended pursuant to the parties' stipulation extending several deadlines, but the parties inadvertently failed to include an extension for the deadline to file non-dispositive motions. (Doc. No. 188 at 5.) Plaintiff asserts that the non-dispositive motion filing deadline of December 20, 2019 is "obviously an inappropriate motion deadline" because it is "so far before the close of discovery"—February 28, 2020. (*Id*.)

7

order a seventh time.[4] (Doc. No. 189.)  In particular, plaintiff was aware of the number of orders to show cause as early as October 8, 2019 and conducted a deposition of the state defendants' PMK regarding the *number* of OSCs on January 29, 2020, but for some unexplained reason, did not include the topic of yearly costs of those OSCs in that deposition notice.  (*Id*. at 12–13) (emphasis added).  Had plaintiff done so, the magistrate judge reasoned, there would have been "additional time to meet and confer on whether a witness could testify to such information, and time for a potential motion to compel."  (*Id*. at 13.)  Moreover, the magistrate judge referred to the guidelines in the court's initial scheduling order, which reflect that the relevant deadline for a motion to compel is the non-expert discovery deadline—not the non-dispositive motion filing deadline that plaintiff seeks to extend—and that compliance with discovery cut-off dates "requires motions to compel be filed *and heard* sufficiently in advance of the discovery cutoff so that the Court may grant effective relief within the allotted discovery time."  (*Id*. at 11–12.)  The magistrate judge concluded that "[p]laintiff's *ex parte* application filed on February 28, 2020, the day the non-expert deadline expired, [did] not demonstrate good cause to deviate from the terms of the scheduling order governing procedures for filing discovery motions well in advance of the discovery deadline."  (*Id*. at 12.)  Furthermore, the magistrate judge found that whether or not this case is unlikely to go to trial "due to impacted nature of the Eastern District's Fresno courthouse, . . . such fact is not compelling nor establishes good cause to deviate from the deadlines or standards set forth in the scheduling order."  (*Id*. at 12.)  The magistrate judge also denied plaintiff's requested alternative relief for an order striking the state defendants' lack of resources defense but did so "without prejudice to Plaintiff renewing such request *in limine* or in another appropriate noticed motion . . . ."  (*Id*. at 13.)

---

[4] The magistrate judge noted that the non-dispositive motion filing deadline and the non-expert discovery deadline had repeatedly been set on the same date under the scheduling order.  (Doc. No. 189 at 10.)  Although the court made modifications to the scheduling order on June 18, 2019 and October 2, 2019 setting different dates for those deadlines, the magistrate judge was not persuaded by plaintiff's assumption that had the parties been more careful in crafting their stipulation, the date for the non-dispositive motion filings deadline would have been set on a significantly different date than the non-expert discovery deadline of February 28, 2020.  (*Id*. at 11.)

On March 11, 2020, plaintiff's counsel filed the pending request for reconsideration of the magistrate judge's order denying her *ex parte* application. (Doc. No. 191.) First, plaintiff's counsel explains that they initially noticed the deposition of the state defendants' PMK regarding yearly costs related to OSCs for January 31, 2020—a month before the close of discovery—and then rescheduled the deposition to the last day of discovery due to the state defendants' objections and out of professional courtesy, yet defense counsel notified plaintiff's counsel three days before the close of discovery that they would not produce a witness and the deposition would not go forward. (*Id*. at 2.) Plaintiff's counsel contends that "the State Defendants refused to produce a PMK in blatant disregard for the rules of this Court" and it would be "unjust to allow the State Defendants to delay the deposition with feigned meet and confer efforts only to abruptly refuse to abide by the rules and produce a PMK as previously agreed, leaving Plaintiff without any recourse." (*Id*.) Second, plaintiff's counsel argues that because this case is highly unlikely to go to trial in 2020 or even 2021, allowing plaintiff to now move to compel the PMK deposition would not be prejudicial to the parties, and "this is a unique situation where inflexible enforcement of a scheduling order denies justice . . . ." (*Id*. at 3.) Third, plaintiff asserts that she is left with no recourse but to file a motion *in limine* to strike the state defendants' defense of lack of resources, and in ruling on that anticipated motion, the court may be inclined to compel the state defendants' to produce a PMK witness for deposition on the eve of trial as a lesser sanction instead of striking the lack of resources defense. (*Id*.) Thus, plaintiff argues that "if a compelled deposition is a likely or possible outcome, it makes much more sense to have that deposition taken now, rather than on the eve of trial," and similarly, if the defense is to be stricken, "it also makes sense to strike it now, rather than at or after the pretrial conference after pretrial preparation, and settlement/mediation conferences, are already done." (*Id*.)

On March 18, 2020, the state defendants filed an opposition to plaintiff's request for reconsideration, in which they argue that plaintiff's request for reconsideration should be denied because plaintiff has failed to identify how the order denying her *ex parte* application to amend the scheduling order was "clearly erroneous or contrary to law." (Doc. No. 192) (citing Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's

9

consent").) Defendants also contend that plaintiff has failed to show how the magistrate judge's ruling regarding her requested alternative relief to strike the state defendants' lack of resources defense, which allowed plaintiff to renew her request by way of a motion *in limine* or in another appropriate noticed motion, was contrary to law. (*Id*. at 3.)

The undersigned has reviewed the magistrate judge's March 4, 2020 order denying plaintiff's *ex parte* application and finds that the order is not clearly erroneous or contrary to law. Plaintiff's arguments ignore the legal standard that applies when a district judge reviews non-dispositive pretrial matters that have been referred to and decided by a magistrate judge: whether the order is "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72 (a); *see also* 28 U.S.C. § 636(b)(1)(A); L.R. 303(f). While plaintiff has articulated her underlying frustrations and assertions that the result under the magistrate's order is unjust or unfair, or that a different decision "makes much more sense," plaintiff has not specified what part of the magistrate judge's order is "clearly erroneous or contrary to law." *See* L.R. 303(c) (plaintiff's request for reconsideration "shall specifically designate the ruling, or part thereof, objected to and the basis for that objection.") The undersigned finds that in deciding whether to modify the scheduling order as requested in plaintiff's *ex parte* application, the magistrate judge applied the correct "good cause" legal standard, considered plaintiff's due diligence, and cited relevant authority.[5]

The undersigned concludes that the magistrate judge's order denying plaintiff's *ex parte* application was not clearly erroneous or contrary to law. Accordingly, plaintiff's request for

---

[5] The scheduling order "controls the course of the action" unless modified by the court. Fed. R. Civ. P. 16(d). Orders entered before the final pretrial conference may be modified only upon a showing of "good cause." Fed. R. Civ. P. 16(b)*; see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment); *Johnson*, 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id*. If the moving party was not diligent, the court's inquiry should end. *Id*.; *see also Sutter Davis Hospital v. United States*, No. 2:12-cv-2407-WBS-GGH, 2014 WL 28817, at *1 (E.D. Cal. Jan. 2, 2014).

10

reconsideration of the magistrate judge's order dated March 4, 2020 will be denied.

**CONCLUSION**

For the reasons set forth above,

1. The state defendants' request for reconsideration of the magistrate judge's order dated February 7, 2020 (Doc. No. 186) is denied;

2. Plaintiff's request for reconsideration of the magistrate judge's order dated March 4, 2020 (Doc. No. 191) is denied; and

3. This matter is referred back to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **April 21, 2020**               /s/ Dale A. Drozd
                                          UNITED STATES DISTRICT JUDGE