1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY ATAYDE,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>NAPA STATE HOSPITAL, et al.,<br><br>　　　Defendants. | Case No.  1:16-cv-00398-DAD-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH FINANCIAL CONDITION DISCOVERY ORDERS AND REQUEST FOR SANCTIONS AND FINDING OF CONTEMPT<br><br>(ECF Nos. 196, 197, 198, 199, 201, 205, 206, 207, 208) |

Currently before the Court is Plaintiff Lucy Atayde's motion to compel certain Defendants to comply with discovery orders, for sanctions, and a finding of contempt.  For the reasons explained herein, Plaintiff's motion shall be granted in part and denied in part.

## I.

## BACKGROUND

Plaintiff filed this action on January 5, 2016, and is proceeding on a second amended complaint filed on June 11, 2019.  (ECF Nos. 1, 148.)  The action involves the suicide of Richard Ramirez that occurred in Merced County jail while he waited to be transferred to Napa State Hospital after he was found incompetent to stand trial.  (ECF No. 148; Pl's Mot. Compel & Request for Sanctions ("Mot.") 3, ECF No. 196.)   Plaintiff Lucy Atayde is proceeding

individually and as successor in interest of the decedent, and brings civil rights and wrongful death claims against Napa State Hospital,[1] Merced County, the jail medical provider California Forensic Medical Group ("CFMG"), and the individuals alleged to be involved.  (ECF No. 148.)

Plaintiff brings claims for punitive damages against the individual Defendants and CFMG.  (Id.)  On December 6, 2019, Plaintiff served requests for production of documents, set four, on the individual State Defendants[2] requesting financial information relevant to Plaintiff's claim for punitive damages.  (Mot. 3; Decl. of Theresa Allen ("Allen Decl.") ¶ 3, Ex. A, ECF No. 197.)  Similar requests were served on the County Defendants and CFMG, who Plaintiff states has produced the information requested subject to the protective order, "and did not require extensive litigation to do so."  (Mot. 3.)  On January 3, 2020, the individual State Defendants did not produce responsive documents and served objections to each request.  (Mot. 3; Allen Decl. ¶ 4.)

Following attempts at meeting and conferring regarding the discovery, on February 7, 2020, the Court conducted an informal discovery dispute conference at the parties' request.  (ECF No. 184.)  Following the conference, the Court issued an order granting Plaintiff's request for an order compelling production of the discovery in question (hereinafter the "Discovery Order").  (ECF No. 185.)  At the conference, Plaintiff agreed to the State Defendants' request to limit the temporal span of the requested discovery to a two-year period.  (Id. at 10.)  The State Defendants presented no other arguments that the requests were overbroad.  (Id.)  Nonetheless, to protect the interests of the individual State Defendants, and given the requests were not produced verbatim to the Court in the joint briefing prior to the informal conference, the Court's Discovery Order specified that the order was subject to the parties meeting and conferring regarding any needed narrowing of the breadth and scope of the financial information sought.

---

[1]  The docket and complaint identify Napa State Hospital, State of California Department of State Hospitals, as a Defendant, however, the real party in interest appears to be the State of California, by and through the California Department of State Hospitals.  (ECF No. 201 at 7.)

[2]  The individual State Defendants are Dolly Matteucci, Dana White, Patricia Tyler, Cindy Black, and Diane Mond.  This order may refer to these Defendants simply as the "State Defendants," despite the fact that in previous filings and orders, the term "State Defendants" included Napa State California (the State of California), within its meaning and use.  Here however, the discovery in dispute does not involve requests directed at Napa State Hospital.

((Id. at 10-11.)

Despite directing the parties to meet and confer regarding the precise scope and breadth of the actual requests, the Court did make certain findings relevant to the discovery dispute here. Specifically, the Discovery Order stated in regard to the State Defendants' argument that the requested information may be available from publicly available sources that:

> As discussed at the teleconference, based on the Court's experience with punitive damages and the kinds of financial information that is publicly available, the Court does not find the publicly available information sufficiently covers the information sought or needed. An incomplete financial picture can potentially act as a detriment to either Plaintiff or the State Defendants in determining punitive damages. Accordingly, the Court does not find it must limit the extent of the discovery as it cannot be readily obtained from other sources. However, in making the request, Plaintiff must be mindful of the scope under Fed. R. Civ. P. Rule 26(b)(1). Should an issue arise regarding the actual request, the Court will entertain further informal discovery dispute requests.

(Id. at 9-10.) In the portion of the Discovery Order pertaining to whether privacy concerns could be adequately addressed by protective order, the Court further stated that: "To the extent the parties, through the meet and confer discussed below, find the protective order insufficient to address concerns with the discovery in question, the Court is open to entering another or modified protective order." (Id. at 9.)

On February 18, 2020, counsel met and conferred in person, and in response to Plaintiff's proposal, counsel for the State Defendants, Amy McTavish ("Counsel McTavish"), offered to produce two years of public salary information and California's Form 700 Statement of Economic Interest for the individual State Defendants who are required to file such form. (Mot. 4; Allen Decl. ¶ 9.) Plaintiff declined the proposal, as the offer to produce publicly available salary information and disclosure forms were inadequate in Plaintiff's view to assess the Defendants' true financial condition, and because the Court had already stated in the Discovery Order that the publicly available information would not sufficiently encompass the information sought or needed for the determination of punitive damages. (Mot. 4; Allen Decl. ¶ 10, Ex. C; ECF No. 185 at 9.)

On February 19, 2020, Plaintiff's counsel emailed Counsel McTavish a second joint discovery dispute letter outlining a proposal to narrow the scope and breadth of the requests.

(Mot. 4; Allen Decl. ¶ 10, Ex. C.)  Counsel McTavish declined the offer to participate in an informal discovery dispute conference and on February 21, 2020, the State Defendants filed a motion for reconsideration of the undersigned's February 7, 2020 order granting Plaintiff's request for an order compelling production.  (Mot. 4, Allen Decl. ¶ 11, Ex. D; ECF No. 186.)

On February 28, 2020, the date of the non-expert discovery deadline, Defendants produced a one page Excel spreadsheet summarizing Defendants' salaries from 2018 and 2019, and California's Form 700 Statement of Economic Interest for Defendants Tyler, Matteucci, and Black, only.  (Mot. 5.)  The only financial information produced for Defendants Mond and White were the listing of their salaries summarized in the Excel spreadsheet.  (Mot. 5.)[3]

On April 22, 2020, District Judge Dale A. Drozd denied the request for reconsideration in all regards, and referred the matter back to the undersigned for any further proceedings.  (ECF No. 193.)  On the same date, Plaintiff's counsel sent Counsel McTavish an email seeking the documents requested in the February 19, 2020, discovery letter, which Plaintiff contends significantly limited the scope of the documents requested.  (Mot. 5; Allen Decl. ¶ 13, Ex. E.) On April 23, 2020, Counsel McTavish responded:

> Our motion sought reconsideration on the ruling that ANY financial information was discoverable from the State defendants as a matter of public policy.  The order stating the State defendants['] financial information is discoverable stands.  The order did not compel the discovery you are seeking - as you recall you did not attach your discovery requests, so they were not considered.  We complied with the order and produced responsive information to you.  You did not bring a motion to compel further responses, and discovery is long closed.  You may attempt to seek this information [sic] trial.

(Id.)

On May 4, 2020, Plaintiff filed the instant motion seeking to compel the State Defendants' compliance with the financial condition discovery orders, and requesting sanctions

---

[3]  Plaintiff also contends the information in the spreadsheet summary conflicted in significant respects with publicly available information about Defendants' salaries published on the Transparent California website.  (Mot. 5; Allen Decl. ¶ 12.)  This issue was discussed at the hearing on Plaintiff's motion.  Counsel McTavish indicated she relied upon the representations of her clients, and assumes the information provided is accurate.  The Court does not find Counsel McTavish's in this regard to be in bad faith, however, compliance with the Discovery Order would have likely resulted in the production of documentation that would either refute or confirm the salary information disclosed in the spreadsheet, and clearly supports the Court's finding in the Discovery Order that the publicly available financial information is insufficient for the purposes of the discovery requested.

and a finding of contempt.  (ECF No. 196.)  On the same date, Plaintiff also filed two declarations in support of the motion.  (ECF Nos. 197, 198.)  On May 13, 2020, the State Defendants filed an opposition to Plaintiff's motion to compel.  (Def.'s Opp'n Pl.'s Mot. Compel ("Opp'n"), ECF No. 201.)  On May 18, 2020, Plaintiff filed a reply brief.  (ECF No. 205.)

On May 20, 2020, the Court held a hearing on Plaintiff's motion via videoconference call.  (ECF No. 207.)[4]  Teresa Allen and Julia Sherwin appeared on behalf of Plaintiff, Jemma Parker Saunders appeared on behalf of the County Defendants, and Amie McTavish appeared on behalf of the State Defendants.  (Id.)  Defendant CFMG did not make an appearance and is not involved in the discovery dispute.  Pursuant to the Court's request, on May 20, 2020, Plaintiff filed a supplemental declaration pertaining to the request for attorneys' fees, and on May 21, 2020, the State Defendants filed a reply to Plaintiff's supplemental declaration.  (ECF Nos. 206, 208.)

## II.

## LEGAL STANDARD

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Rule 34 of the Federal Rules of Civil Procedure provides that a party may serve upon any other party a request for production of any tangible thing within the party's possession, custody, and control that is within the scope of Rule 26.  Fed. R. Civ. P. 34(a)(1)(B).  The party receiving

---

[4] Due to connectivity issues, Counsel McTavish switched to communicating via audio only during the hearing.

the request has thirty days in which to respond.  Fed. R. Civ. P. 34(b)(2).  A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv).

Rule 37(b) of the Federal Rules of Civil Procedure provides for the imposition of sanctions for not obeying a discovery order: "If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Such "just orders" may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  Further, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Pursuant to the undersigned's procedures for informal discovery dispute resolution, the parties may stipulate to allow for the resolution of discovery disputes outside of the formal Local Rule 251 procedures by conducting an informal telephonic conference.  Prior to conducting such conference, the parties must agree to the informal process, agree to an entry of an order by the Court after the conference, and agree to abide by such order.  See "Informal Telephonic Conferences Regarding Discovery Disputes for Magistrate Judge Stanley A. Boone," available at www.caed.uscourts.gov, under Judges; United States Magistrate Judge Stanley A. Boone (SAB); Case Management Procedures; Discovery Dispute Procedures.

The procedures also provide:

> The intent of the informal discovery dispute conference is to avoid litigation costs and the unnecessary and collateral focus on sanctioning a party. Accordingly, the Court will not impose sanctions against any party for the conduct giving rise to the discovery dispute. **However, the Court will impose sanctions against any party who, after agreeing to participate in the informal discovery process, fails to meet and confer in good faith, fails to participate in drafting the joint statement in good faith, fails to timely file the letter brief; and/or fails to appear at the informal telephonic hearing.**

Id. (emphasis in original).

## III.

## DISCUSSION

Plaintiff argues that following the Discovery Order and the denial of reconsideration, the State Defendants have blatantly disregarded the orders' mandate to produce the financial discovery. Plaintiff explains they sought to meet and confer telephonically and in person, provided the State Defendants with Plaintiff's portion of a second joint discovery dispute letter as the Court previously advised it would entertain, and Plaintiff significantly limited the scope and breadth of the requests from the initial form of the requests in an attempt to resolve this dispute without further court intervention   (Mot. 7; Allen Decl., Ex. A.)  Instead of engaging in meaningful meet and confer efforts, Plaintiff contends that the State Defendants ignored Plaintiff's proposed compromises and instead produced incomplete, inaccurate, and insufficient publicly available financial documents, which the undersigned already determined "does not cover the information sought or needed," (ECF No. 185).  (Mot. 7.)

The State Defendants respond that Plaintiff mischaracterizes the discovery dispute and proffer that from their perspective, the State Defendants have met and conferred and have produced responsive discovery in accordance with the undersigned's informal discovery procedures.  (Opp'n 1.)  The State Defendants argue the order denying reconsideration did not compel any further discovery, and Plaintiff's motion has no proper foundation because there has not been a complete failure to respond to the discovery, and thus Plaintiff's motion violates Local Rule 251's requirement for a joint statement.  (Opp'n 2.)  The Defendants contend that because discovery has now closed, Plaintiff's motion is untimely under Federal Rule of Civil

1   Procedure 16, and Plaintiff does not seek nor has shown good cause to modify the scheduling

2   order.  (Opp'n 2.)

3          The Court first addresses the preliminary issues of whether a joint statement was required

4   and whether Plaintiff's motion is untimely under the scheduling order.

5          **A.      Joint Statement Requirement under Local Rule 251**

6          The parties raise the preliminary issue of whether a joint statement was required to be

7   filed by Plaintiff with this motion.  Generally, discovery motions are scheduled with a twenty-

8   one day hearing notice and briefing schedule, and require the submission of a joint statement

9   regarding the discovery disagreement.  L.R. 251(a)-(c).  A discovery motion may be filed on a

10  fourteen day hearing notice and briefing schedule without a joint statement: "(1) when there has

11  been a complete and total failure to respond to a discovery request or order, or (2) when the only

12  relief sought by the motion is the imposition of sanctions."  L.R. 251(e).

13         Plaintiff contends the current motion did not need to be accompanied by a joint statement

14  under Local Rule 251(e)(1) because the State Defendants have outright refused to produce

15  documents responsive to Plaintiff's requests for production.  (Mot. 6.)  State Defendants contend

16  that while Plaintiff disagrees with the adequacy of the responses, Plaintiff does not dispute that

17  responses were furnished, and thus there was not a complete failure to respond to discovery and

18  Plaintiff was required to file a joint statement.  (Opp'n 3.)  While the State Defendants did not

19  initially produce documents, following the discovery dispute conference, the State Defendants

20  met and conferred with Plaintiff, produced the "financial information they indicated they would,"

21  and thus Plaintiff's motion should be denied for the failure to obtain the Rule 251 joint

22  statement.  (Opp'n 3.)

23         The Court strongly encourages the use of the joint statement as it aids the parties and the

24  Court in narrowing the factual and legal issues for adjudication, and additionally compels the

25  parties to engage in further meet and confer to potentially resolve issues before presenting them

26  to the Court.  Under the facts presented here, because the parties have met and conferred, went

27  through the informal discovery dispute process, the motion for reconsideration, and then further

28  meet and confer that was not fruitful resulting in the individual State Defendants producing

documents not within any mutually agreed parameters, the Court finds there has not been a *complete* lack of a discovery response by the State Defendants.  Nonetheless, given that the Discovery Order ordered the State Defendants to produce the requested discovery subject to further meet and confer, and given the Court finds the State Defendants have violated the text and the spirt of the Discovery Order as discussed below, and refused to bring their impasse for further guidance through an additional informal discovery conference as repeatedly suggested in the Discovery Order, the Court does not find Plaintiff's position to be unreasonable.  In fact, in light of what the State Defendants produced, their response to the discovery borders on complete refusal.  This procedural objection by the State Defendants is thus not well founded given what they produced, how they produced it, and the apparent inaccuracies within the documents produced by the State Defendants, facts that are nearly tantamount to a complete refusal to comply with the Court's Discovery Order.

Accordingly, the Court rejects the State Defendants' procedural objection.  As the Local Rule states, "refusal without good cause to execute the required joint statement, shall be grounds, in the discretion of the Court, for entry of an order adverse to the party represented by counsel so refusing or adverse to counsel."  L.R. 251(d); see also L.R. 102(d) ("Unless contrary to law, the Court in its discretion may make such orders supplementary or contrary to the provisions of these Rules as it may deem appropriate and in the interests of justice and case management under Fed. R. Civ. P. 16 or Fed. R. Crim. P. 17.1 in a special circumstance.").

**B.      Whether Plaintiff's Motion is Untimely under the Scheduling Order**

As a second preliminary issue, the State Defendants argue that because discovery has now closed, Plaintiff's motion is untimely under Federal Rule of Civil Procedure 16, and Plaintiff has not sought nor shown good cause to modify the scheduling order.  (Opp'n 2.)

Plaintiff argues that although the non-expert discovery deadline expired on February 28, 2020, the motion is timely because with the filing of the motion for reconsideration on February 21, 2020, compliance with the discovery order was in effect stayed, and the Court would not have been in a position to weigh such motion given the motion for reconsideration was still pending.  (Mot. 7-8.)  The State Defendants argue that as shown by Counsel Allen's declaration,

Plaintiff was on notice of what financial information the State Defendants would produce in response to the informal discovery order, to be produced ten (10) days before the discovery cutoff, but Plaintiff failed to move to compel additional responses or request an extension of the discovery deadline to resolve the issue. (Allen Decl. ¶ 9.) Defendant emphasizes that this action has been ongoing for several years with multiple modifications to the scheduling order and punitive damages claimed since the action was instituted, yet Plaintiff waited until the eleventh hour to propound overly broad and invasive financial discovery requests. (Opp'n 3.)

Plaintiff sought the discovery in question and brought the discovery dispute to the Court well before the discovery cut-off date. The Court's Discovery Order issued on February 7, 2020, was entitled "Order Re Informal Discovery Dispute Granting Plaintiff's Request for Order Compelling Production." (ECF No. 185.) The Discovery Order stated:

> Aside from the argument that the requests are temporally overbroad, the State Defendants have not submitted arguments in their briefing that the requests are overbroad in other regards. Further, the text of the actual requests for production were not reproduced verbatim in the joint letter brief for the Court to review. Accordingly, as discussed at the teleconference and given all of the issues considered herein, the Court shall grant Plaintiff's request for an order compelling production of the discovery in question, subject to the parties meeting and conferring regarding narrowing the breadth of the financial information sought to only what is necessary.

(ECF No. 185 at 10.) The Discovery Order also suggested the parties bring further issues concerning the discovery to the undersigned for a further informal discovery dispute conference, and offered that the Court was willing to enter a different or modified protective order if necessary to resolve other issues relating to the privacy rights of the State Defendants. (Id. at 9-10.)

Following the issuance of the Discovery Order, Plaintiff attempted to meet and confer regarding the scope of the discovery but the parties did not reach an agreement. (Mot. 4; Allen Decl. ¶¶ 9-10.) Following the impasse, Plaintiff then attempted to begin the process of bringing the issue before the Court for adjudication through a further informal discovery dispute process, and the State Defendants declined, and then filed a motion for reconsideration which was denied on April 22, 2020. (ECF No. 193.)

Given these facts, the Court is not going to fault the Plaintiff for filing this motion after

1   the close of non-expert discovery, when Plaintiff sought relief through the informal discovery

2   dispute process as early as January 31, 2020.  (ECF No. 181.)  The Discovery Order following

3   the informal conference set the date for Defendants to comply and produce the financial

4   discovery by the date of the non-expert discovery cutoff date.  (ECF No. 185 at 11.)  Plaintiff

5   attempted to meet and confer in compliance with the Discovery Order, and then the order was

6   pending reconsideration during the interim period.

7        The Court further rejects Defendants' related argument that Plaintiff was required to file

8   an additional motion to compel the discovery in issue rather than the instant motion to compel

9   compliance with the previous Discovery Order.[5]  Plaintiff is only seeking compliance with the

10  previous Discovery Order that was issued well before the non-expert discovery cut-off, and

11  which was pending reconsideration since one week before the discovery cut-off.  Accordingly,

12  the Court declines to find Plaintiff's motion to be in violation of the Court's scheduling order,

13  and declines to find that Plaintiff was required to file an additional motion to compel the

14  discovery rather than seeking compliance of the previous Discovery Order.  The Court will now

15  turn to the substantive merits underlying Plaintiff's motion.

16

17  [5] Defendants also argue the denial of the motion for reconsideration does not compel further discovery.  (Opp'n 4.)

18  The Defendants highlight their motion to reconsider was based on the far reaching public policy considerations regarding disclosure of the financial information of public employees with potentially no personal involvement in the claims, and that while the District Judge's denial of the motion for reconsideration rejected these arguments and

19  agreed the information was discoverable, the "scope of what is discoverable in a case such as this where the State Defendants had no personal involvement with the decedent has not been decided."  (Opp'n 4.)  Further, Defendants

20  argue that Plaintiff bears the burden of demonstrating actual and substantial prejudice from the denial of discovery, Hasan v. Johnson, 2012 WL 569370 *2, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Feb. 21, 2012) (citing

21  Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)), and has not shown demonstrable prejudice from the responses furnished thus far by the State Defendants.  (Opp'n 4.)  In this regard, Defendants argue their personal

22  wealth is not of consequence in determining the claim of liability underlying this action.  (Id.)

23  As the Court held in the Discovery Order, Plaintiff is entitled to the discovery in question, and was only subject to meeting and conferring regarding the scope of the discovery requests because the text of the requests were not

24  provided to the Court in the joint letter brief, and aside from the temporal span, the State Defendants had not argued to the Court any further issues regarding the breadth or scope of the requests.  Despite no arguments having been

25  presented by the State Defendants regarding potential overbreadth of the actual requests in question, the Court declined to simply order the discovery produced pursuant to the requests for production in the form as served, and

26  the Court instead directed the parties to further meet and confer regarding such breadth and scope to protect the privacy interests of the State Defendants.  Further, the Court has already determined Plaintiff is entitled to the

27  discovery in relation to their punitive damages claims, and thus would be prejudiced if they are not furnished such discovery responses.  Accordingly, the Court finds the State Defendants' arguments in this regard to have no

28  absolutely no merit.

1   ///

2        **C.**     **Plaintiff's Motion to Compel Compliance with the Discovery Order**

3        The Court does not view the State Defendants' efforts to comply with the undersigned's

4   directives as discussed at the informal discovery conference and expressed in the Discovery

5   Order to be sufficient.  Plaintiff is entitled to receive the discovery requested, and if the parties

6   were unable to agree on the precise breadth and scope of the requested discovery, given the

7   undersigned already considered the principal legal contentions regarding the discoverability of

8   the financial information at issue, the most prudent course of action would have been either to

9   seek further guidance from the undersigned through a follow-up informal discovery conference

10  to resolve any outstanding issues after the District Judge denied the State Defendants' motion for

11  reconsideration of the undersigned's discovery order, or if the State Defendants were disinclined

12  to do so, to file a motion for protective order presenting their position to the Court as to why they

13  were unwilling to further meet and confer and come to an agreement as directed in the Discovery

14  Order.[6]  Plaintiff attempted to schedule a further informal conference following the break-down

15  of meet and confer, and Defendant declined to do so, and did not file a motion for protective

16  order regarding the scope of the requests.  While the undersigned does not mandate the resolving

17  of discovery disputes through the informal process, the parties already participated in one such

18  conference and agreed to abide by the Discovery Order issued after, and utilizing such process

19  for further guidance through the impasse could have saved the time and resources of the Court

20  and all those involved, particularly during this judicial and public health emergency.

21       Turning to the actual substance of the discovery requests, the Court reiterates that in

22  issuing the Discovery Order after the informal discovery conference, the undersigned was not

23  privy to the precise discovery requests at issue, and Defendants did not offer specific arguments

---

[6]  The Court does not mean to suggest that Defendants were required to participate in a further informal discovery process.  However, pursuant to the informal discovery conference procedures, the State Defendants agreed to abide by the Discovery Order issued after the first conference, which expressly found the publicly available information to be insufficient.  Thus, the refusal to agree to produce any information aside from publicly available information was a violation of the text and spirit of the Discovery Order, and thus if State Defendants were unwilling to bring the impasse for further guidance through the informal process, State Defendants should have filed a motion for protective order to address the precise breadth and scope of the requests, given the requests were not produced in the joint statement prior to the first informal conference, and given Defendants did not present any specific arguments concerning overbreadth previously, aside from the temporal span of the requests.

regarding overbreadth, aside from the temporal objection which was resolved through mutual agreement at the conference.  Through the instant motion, Plaintiff requests an order that the State Defendants produce the following financial condition information for the period from January 1, 2018, to the present:

> • Two most recent federal tax returns;

> • Monthly bank statements showing balances (charges and expenditures to be redacted);

> • Monthly, quarterly, and annual brokerage or investment statements showing balances;

> • Bank/creditor documentation of annual mortgage, credit card, and other debt balances; and

> • Pension balances.

The Court has reviewed Plaintiff's proposed narrowing of the discovery requests and agrees they have been substantially narrowed from the form originally served on the State Defendants.  (Allen Decl. ¶ 3, Ex. A.)  Defendant has not presented any further specific or entertainable arguments concerning the breadth or scope of Plaintiff's proposed narrowing in response to the instant motion, instead focusing on the perceived procedural weaknesses in the instant motions discussed above, and the merits of sanctions discussed below.

Based on the legal authorities discussed in the Discovery Order allowing for discovery of such information for punitive damages, the Court's discussion with the parties at the February 7, 2020 hearing and subsequent Discovery Order issued following the conference, the agreed upon narrowing of the temporal restriction, and other matters discussed herein, the Court does not find the Plaintiff's proposed requests to be overbroad or improperly invasive, and will order the individual State Defendants to produce such documents within fourteen (14) days of entry of this order without any further modification, ability to meet and confer for purposes of narrowing, or ability to mount further objections.

### D.     Request for Attorneys' Fees, Sanctions, and Finding of Contempt

Plaintiff requests sanctions under Federal Rule of Civil Procedure 37(b)(2)(A) which "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules," Wyle v.

R.J. Reynolds Indus. Inc., 709 F.2d 585, 589 (9th Cir. 1983) (citing Nat'l Hockey League v. Metro. Hockey Clubs, 427 U.S. 639, 643, (1976)).  (Mot. 8.)  Plaintiff also argues sanctions are allowable under Local Rule 110 which provides that the "failure . . . of a party to comply . . . with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  Plaintiff argues that the State Defendants' continued refusal to produce relevant and discoverable financial information despite two court orders to do so, requires sanctions, and it is beyond dispute that Defendants' financial information is now discoverable, citing numerous case law allowing for such discovery well beyond the two-year period now requested by Plaintiff.  (Mot. 10-11.)  Given the state of the law and the Court's discovery order and reconsideration order, Plaintiff believes no further discovery dispute should have occurred, and emphasizes again that other Defendants in this action produced such financial information pursuant to the protective order without dispute.  (Mot. 11.)

Pursuant to Federal Rule of Civil Procedure 37 which requires the imposition of attorneys' fees unless the failure to produce discovery was substantially justified or other circumstances make an award unjust, Plaintiff requests the imposition of attorneys' fees against the State, the employee defendants (the individual State Defendants), and California Attorney General Xavier Becerra.  (Mot. 12.)  Plaintiff contends the Defendants have flagrantly abused the discovery process and continue to cause unnecessary and unjustified delays, requiring court intervention that should be unnecessary by refusing to comply with the Discovery Order.  (Mot. 12.)  Plaintiff argues there can be no substantial justification for the State Defendants to ignore the previous orders requiring them to produce such information, and it would be unjust to not award expenses here, as Plaintiff should not be required to bear the costs of the repeated failure to obey and comply with the Discovery Order and rules.  (Mot. 12.)  Plaintiff also argues there is clear and convincing evidence that the State Defendants violated the discovery order and their compliance was not technical nor *de minimis*, but rather an outright violation of the order.  (Mot. 14.)  Plaintiff contends the State Defendants did not make a good faith effort to produce the documents, and instead ignored Plaintiff's offer to narrow the scope of the requests, and then produced inaccurate summaries of publicly available salary information which the undersigned

1  had already found insufficient for the purposes of such discovery.  (Mot. 14.)

2       In response, the State Defendants emphasize the undersigned's informal discovery

3  conference procedures that state: "The intent of the informal discovery dispute conference is to

4  avoid litigation costs and the unnecessary and collateral focus on sanctioning a party.

5  Accordingly, the Court will not impose sanctions against any party for the conduct giving rise to

6  the discovery dispute."  (Opp'n 5-6.)  The State Defendants thus contend it is contrary to the

7  informal discovery process agreement for Plaintiff to be pursuing attorneys' fees associated with

8  propounding the discovery and the informal discovery process.  Defendants argue the request is

9  based on the argument that the State Defendants completely failed to respond to the financial

10  information discovery, yet Plaintiff's motion concedes that Defendants did produce some

11  discovery and continued to engage in meet and confer efforts.  (Opp'n 6.)  Defendants contend

12  they were forthright to Plaintiff concerning what they were agreeable to produce in response to

13  the discovery requests, and informed Plaintiff of what they would produce at least ten (10) days

14  before the responses were due.  (Allen Decl., ¶ D.)  Thus, they argue there was no bad faith or

15  violation of the discovery order that would justify a finding of contempt.

16       The Court first turns to Plaintiff's request for the sanction of precluding the State

17  Defendants from presenting certain evidence in this action.

18       1.   <u>The Court Declines to Impose the Sanction of Preclusion of Evidence or a</u>
          <u>Finding of Contempt</u>
19

20       Plaintiff requests the Court sanction the State Defendants by precluding them from

21  introducing evidence or arguing at trial, any of the following: "1) that financial constraints or

22  limited resources played any role in their failures to comply with Incompetent to Stand Trial

23  ("IST") commitment orders, including the IST commitment order issued concerning Richard

24  Ramirez; 2) that financial constraints or limited resources played any role in their failures to

25  triage or assess the psychiatric acuity of IST people ordered into their custody for restoration of

26  competency; 3) that they are unable to pay any amount of compensatory damages or punitive

27  damages Plaintiff requests at trial; and 4) that any amount of compensatory damages or punitive

28  damages would violate their Due Process rights or otherwise create any financial hardship for

any Defendant, including the State and its employees." (Mot. 11.)

The State Defendants argue the request for sanctions is overbroad and unrelated to the punitive damages claim. Defendant emphasizes that "Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery," Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107, 72 L. Ed. 2d 492 (1982).[7] (Opp'n 5.)

---

[7] In upholding the sanctions, the Supreme Court found both conditions were satisfied by the following:

> In holding that the sanction in this case was "just," we rely specifically on the following. First, the initial discovery request was made in July 1977. Despite repeated orders from the court to provide the requested material, on December 21, 1978, the District Court was able to state that the petitioners "haven't even made any effort to get this information up to this point." 1 App. 112a.1 App. 112a. The court then warned petitioners of a possible sanction. Confronted with continued delay and an obvious disregard of its orders, the trial court's invoking of its powers under Rule 37 was clearly appropriate. Second, petitioners repeatedly agreed to comply with the discovery orders within specified time periods. In each instance, petitioners failed to comply with their agreements. Third, respondent's allegation that the court had personal jurisdiction over petitioners was not a frivolous claim, and its attempt to use discovery to substantiate this claim was not, therefore, itself a misuse of judicial process. The substantiality of the jurisdictional allegation is demonstrated by the fact that the District Court found, as an alternative ground for its jurisdiction, that petitioners had sufficient contacts with Pennsylvania to fall within the State's long-arm statute. Supra, at 2103. Fourth, petitioners had ample warning that a continued failure to comply with the discovery orders would lead to the imposition of this sanction. Furthermore, the proposed sanction made it clear that, even if there was not compliance with the discovery order, this sanction would not be applied if petitioners were to "produce statistics and other information" that would indicate an absence of personal jurisdiction. 1 App. 116a.1 App. 116a. In effect, the District Court simply placed the burden of proof upon petitioners on the issue of personal jurisdiction. Petitioners failed to comply with the discovery order; they also failed to make any attempt to meet this burden of proof. This course of behavior, coupled with the ample warnings, demonstrates the "justice" of the trial court's order.

> Neither can there be any doubt that this sanction satisfies the second requirement. CBG was seeking through discovery to respond to petitioners' contention that the District Court did not have personal jurisdiction. Having put the issue in question, petitioners did not have the option of blocking the reasonable attempt of CBG to meet its burden of proof. It surely did not have this option once the court had overruled petitioners' objections. Because of petitioners' failure to comply with the discovery orders, CBG was unable to establish the full extent of the contacts between petitioners and Pennsylvania, the critical issue in proving personal jurisdiction. Petitioners' failure to supply the requested information as to its contacts with Pennsylvania supports "the presumption that the refusal to produce evidence ... was but an admission of the want of merit in the asserted defense." Hammond Packing, 212 U.S., at 351, 29 S.Ct., at 380. The sanction took as established the facts—contacts with Pennsylvania—that CBG was seeking to establish through discovery. That a particular legal consequence—personal jurisdiction of the court over the defendants—follows from this, does not in any way affect the appropriateness of the sanction.

Ins. Corp. of Ireland, 456 U.S. 694, 707–709 (1982) (footnote omitted).

1   Defendants explain the request for sanctions fails to meet either of these standards in asking all
2   State Defendants and counsel be precluded from introducing evidence at trial across these four
3   broad proposed categories, and specifically, the first two requests are unrelated to any punitive
4   damages claim, as there are no allegations the individual State Defendants personally financed
5   the building of new hospital beds for the State of California or personally with their own funds
6   had the ability to hire more employees, and that the other two requests are unjust because
7   Plaintiff has received salary information on all these Defendants and would be on notice of what
8   would be a reasonable punitive damages request.  (Opp'n 5.)

9          The Court largely agrees that the first two requests appear at first glance to be unrelated
10  to the punitive damages claims, at least in respect to these individual State Defendants.  Further,
11  the Court does not yet find the State Defendants conduct to have reached the level of bad faith
12  necessitating this level of sanctioning.  <u>See</u> <u>Ins. Corp. of Ireland</u>, 456 U.S. at 707-709 (failure to
13  provide discovery after over a year-period and multiple court orders).  While taking an
14  apparently hard-liner position, and as discussed herein, a not substantially justified position
15  under a reasonable interpretation of the Discovery Order and order denying reconsideration,
16  counsel's actions appear to stem from a desire to protect the privacy interests of public
17  employees, both specifically in this case and in future cases.  Aside from awarding attorneys'
18  fees as discussed below, the Court will decline further sanctions.

19         For substantially similar reasons, the Court declines to find the State Defendants or their
20  counsel in contempt at this time.  However, if the State Defendants do not produce the discovery
21  as ordered, the Court will be inclined to entertain a renewed motion for further appropriate
22  sanctions or for an order of contempt.

23             2.   <u>The Court Shall Award Reasonable Attorneys' Fees Incurred Following the</u>
24                  <u>Denial of Reconsideration</u>

25         As discussed above, by agreeing to the informal discovery dispute process, the parties
26  agreed to abide by an order issued following the discovery conference.  As discussed at the
27  hearing on this motion, given the undersigned's procedures for informal discovery disputes
28  disfavor imposing sanctions against parties for conduct prior to the discovery dispute, and the

1   fact that the State Defendants' legal position was not indefensible prior to the motion for

2   reconsideration was decided, the Court will decline to award attorneys' fees incurred prior to the

3   motion for reconsideration was adjudicated.  While it is true the majority of courts supported

4   Plaintiff's position as presented at the informal discovery conference, the parties agreed that the

5   Ninth Circuit had not answered the question of whether a party must make a *prima facie* showing

6   they are entitled to punitive damages prior to being allowed to obtain discovery regarding a

7   defendant's financial information.  (ECF No. 185 at 5-6.)  Thus, for time expended on this

8   discovery dispute until the date the State Defendants' request for reconsideration was denied, the

9   Court would find "the failure was substantially justified or other circumstances make an award of

10  expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  However, for all the reasons explained herein, the

11  State Defendants' conduct following the denial of reconsideration presents wholly different

12  considerations, and the Court finds such conduct an unreasonable flouting of the Discovery

13  Order and reconsideration order upholding such decision, and the State Defendants' actions

14  preclude a finding that "the failure was substantially justified or other circumstances make an

15  award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

16      Having determined that an award of some reasonable expenses is warranted, the Court

17  now turns to calculate appropriate and reasonable attorneys' fees.  "[U]nder federal fee shifting

18  statutes the lodestar approach is the guiding light in determining a reasonable fee."  <u>Antoninetti</u>

19  <u>v. Chipotle Mexican Grill, Inc.</u>, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and

20  citations omitted);  <u>see also</u> <u>Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.</u>, No.

21  17CV1943-LAB-LL, 2019 WL 3769191 (S.D. Cal. Aug. 9, 2019) (applying lodestar to calculate

22  reasonable attorneys' fees under Rule 37)(b)(2)(C) for failure to comply with discovery order).

23  The Ninth Circuit has explained the lodestar approach as follows:

24      The lodestar/multiplier approach has two parts.  First a court determines the lodestar
         amount by multiplying the number of hours reasonably expended on the litigation by
25      a reasonable hourly rate.  The party seeking an award of fees must submit evidence
         supporting the hours worked and the rates claimed.  A district court should exclude
26      from the lodestar amount hours that are not reasonably expended because they are
         excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the
27      lodestar upward or downward using a multiplier based on factors not subsumed in the
         initial calculation of the lodestar. The lodestar amount is presumptively the
28      reasonable fee amount, and thus a multiplier may be used to adjust the lodestar

amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations and punctuation omitted).

Under the lodestar method, the court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work. Antoninetti, 643 F.3d at 1176. The district court has the discretion to make adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but concise reason for the fee award. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). The lodestar amount is to be determined based upon the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 896 (1984).

### a.    Reasonable Hourly Rate

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

Plaintiff submits that a reasonable rate for the services of Teresa Allen is $380.00 per hour, and that a reasonable rate for the services of Julia Sherwin is $580.00 per hour, amounts awarded to associate Teresa Allen, and another partner in the law firm, Michael J. Haddad, based on 2018 hourly rates in the case Orr v. Brame, 2:14-cv-00585-WBS-EFB, in which the State of California and an employee were named as defendants, and no appeal was filed. (Allen Decl. ¶ 15; (Suppl. Decl. of Julia Sherwin ("Suppl. Sherwin Decl.") ¶ 6, ECF No. 206.) Partner Michael Haddad's hourly rates are the same as Counsel Sherwin's. (Sherwin Decl. ¶ 12.)[8] Plaintiff highlights that in

---

[8] While Michael Haddad and a paralegal incurred fees relating to this motion, Plaintiff is not seeking reimbursement of such fees at this time, but reserves the right to seek such fees in a fee motion following trial. (Sherwin Decl. ¶ 12.)

Beecham v. City of West Sacramento, 2:07-cv-01115-JAM-EFB, Judge John A. Mendez of the Eastern District found Counsel Sherwin and Counsel Haddad's experience to be about equal, and awarded both an hourly rate of $375.00, over a decade ago.  In May v. San Mateo County, 3:16-cv-00252-LB, a Northern District of California action, the court awarded both partners the 2017 partner rate of $775.00 per hour, and $475.00 per hour for ten-year associates.  Counsel Sherwin further highlights that her 2014 billing rate of $695.00 per hour was approved in both a San Francisco Superior Court action, and in another action in the Northern District of California.  (Sherwin Decl. ¶¶ 13-15.)  Finally, Counsel Sherwin provides a table of six further state court actions where a municipality has agreed to pay billing rates by agreement to avoid motion practice, or where fees were ordered, with rates for Counsel Sherwin in the following amounts: (1) $380.00 in 2005; (2) $400.00 in 2006; (3) $620.00 in three 2011 cases; and (4) $625.00 per hour in 2011.  (Sherwin Decl. ¶ 16.)

Counsel Allen is an associate attorney in her eleventh (11th) year of practice with experience in civil rights litigation and class actions, and obtained a post juris doctor LL.M degree in litigation and dispute resolution.  (Decl. of Julia Sherwin ("Sherwin Decl.") ¶ 9, ECF No. 198.)  Counsel Julia Sherwin is a partner in her law firm, and has approximately twenty-five (25) years of significant litigation experience and involvement in the legal community.  (Sherwin Decl. ¶¶ 17-38.)

While Plaintiff submits representative examples of cases where counsels' firm has received reasonable attorneys' from the Sacramento division of this district, the Northern District of California, and state court actions, Plaintiff has not presented caselaw regarding the prevailing market rate in the relevant community which in this matter is the Fresno Division of the Eastern District of California.  Thus, in addition to consideration of the cases cited by Plaintiff, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded

1   $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00

2   to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of

3   experience.  See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal.

4   2016) (noting attorneys in Fresno Division with twenty or more years of experience are awarded

5   $350.00 to $400.00 per hour, and attorneys with less than fifteen years of experience are awarded

6   $250.00 to $350.00 per hour); Garcia v. FCA US LLC, No. 1:16-CV-0730-JLT, 2018 WL

7   1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour to attorney with nearly

8   thirty years of experience; $300.00 per hour to attorney with nearly fifteen years of experience;

9   $250.00 per hour to attorney with ten years of experience; $225.00 per hour to attorneys attorney

10  with five years of experience; and $175.00 per hour to attorney with less than five years of

11  experience); Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc., No. 1:18-CV-0488-AWI-

12  EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty

13  years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney

14  with nearly twenty years of experience, and attorney with seven years of experience the

15  requested $250.00 per hour); TBK Bank, SSB v. Singh, No. 1:17-CV-00868-LJO-BAM, 2018

16  WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), report and recommendation adopted, No.

17  117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with

18  over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience

19  $350.00 per hour; and attorney with ten years of experience $300.00 per hour); Phillips 66 Co. v.

20  California Pride, Inc., No. 1:16-CV-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. July

21  6, 2017), report and recommendation adopted, No. 1:16-CV-01102-LJO-SKO, 2017 WL

22  3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00

23  per hour); Roach v. Tate Publ'g & Enterprises, No. 1:15-CV-00917-SAB, 2017 WL 5070264, at

24  *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per

25  hour in copyright action); Sanchez w. Frito-Lay, Inc., No. 1:14-cv-00797-AWI-MJS, 2015 WL

26  4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable

27  rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00

28  per hour for attorney with fourteen years of experience).  Recently, the undersigned approved

attorneys' fees in an FLSA action that totaled approximately thirty-one percent (31%) of the common fund, and in performing a lodestar cross-check, found the corresponding rates of $450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior associate attorney with an unspecified amount of years of experience, and a rate of $325.00 per hour for an associate with eight years of experience, to be reasonable.  Englert v. City of Merced, No. 118CV01239NONESAB, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020).

Plaintiff's counsel argues that in the opposition brief, the State Defendants did not dispute the reasonableness of the requested hourly rates or the reasonableness of the time spent as documented in the moving papers.  (Suppl. Sherwin Dec. ¶¶ 4, 7.)  Counsel appears to argue that State Defendants have waived any objection to the requested rates and hours, and that the Court has limited Defendants' permitted objections to any objections over the supplemental time incurred.  (Id.)

It is true that the "party seeking the attorneys' fees bears the burden of producing documentary evidence demonstrating the number of hours spent on and rates in the litigation," and that the "burden then shifts to the opposition to submit evidence challenging the accuracy and reasonableness of the hours charged, the facts of the affidavit, and calculations."  California Ass'n of Rural Health Clinics v. Douglas, No. 2:10-CV-00759-TLN, 2014 WL 5797154, at *3, n.7 (E.D. Cal. Nov. 6, 2014) ("As Defendants fail to submit any evidence challenging the accuracy and reasonableness of Plaintiffs' attorneys' fees, Defendants waive their objections to the motion.  See Local Rule 230(c).") (citations omitted).  In Douglas, the court continued to perform an analysis of whether the fees and hours were reasonable, despite expressly finding the defendants had waived any such objections.

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community and "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11, 896.  "Though affidavits provide satisfactory evidence of the prevailing market rate,

they are not conclusive . . . [and] Courts should rely on their own familiarity with the market . . . bas[ing] their rates on the standards of the legal community in which the court sits." Douglas, 2014 WL 5797154, at *3 ("The rate to be applied is the prevailing market rate for a healthcare attorney practicing in the Sacramento area.  As there is a dearth of cases addressing the market rate for a healthcare attorney in the Eastern District, the Court will look to the prevailing market rate for civil rights attorneys engaging in actions against governmental entities in Sacramento. The Court also considers the rates set forth in Plaintiffs' supporting declarations.") (citations omitted).

Accordingly, based on the declarations submitted by Plaintiff's counsel and the Court's own familiarity with the relevant legal market, the Court finds a reasonable rate for the services of Teresa Allen is $350.00 per hour, and that a reasonable rate for the services of Julia Sherwin is $450.00 per hour.

**b.      Reasonable number of hours**

The Court notes that counsel has already taken the initiative to deduct certain hours from their timesheets.  (Suppl. Sherwin Decl. ¶¶ 4-5.)

Since the date of the denial of the motion for reconsideration, beginning with the entry on May 1, 2020, and accounting for counsel's self-imposed deductions on the timesheet, Counsel Sherwin expended 10.5 hours on the instant motion, associated communications, and the hearing. (Ex. A, ECF No. 206 at 4-6.)

Since the date of the denial of the motion for reconsideration, beginning with the second entry on April 22, 2020 (excluding the entry for reviewing the order on reconsideration), and accounting for counsel's self-imposed deductions on the timesheet, Counsel Allen expended 26 hours on the research and drafting of the motion, review of the opposition, and drafting the reply brief.  (Ex. B, ECF No. 206 at 7-11.)

The State Defendants submitted a brief reply to the supplemental declaration of Julia Sherwin.  (ECF No. 208.)  Therein, the State Defendants argue that the timesheets for Counsel Sherwin improperly include time in February spent reviewing the motion for reconsideration and reviewing the discovery produced.  (Id.)  The State Defendants further argue that the timesheets for

Counsel Allen improperly reflect 1.2 hours meeting and conferring prior to the close of discovery, and 6.6 hours spent on the motion for reconsideration.  (Id.)  State Defendants argue these tasks were not completed in relation to the instant motion and should be deducted.  (Id.)  The State Defendants make no further arguments concerning the reasonableness of the hours expended.

Regarding these objections proffered by the State Defendants, the Court has not included any of these hours in question in the calculation of the total hours expended.[9]  Accordingly, the Court finds that 10.5 hours is reasonable for counsel Julia Sherwin's work on this discovery issue since the time of the order on reconsideration, and 26 hours is reasonable for counsel Teresa Allen's work on this discovery issue since the time of the order on reconsideration.

### c.   Reasonable Attorneys' Fee Award

The Court finds that: (1) counsel Julia Sherwin reasonably expended 10.5 hours at a reasonable rate of $450.00 per hour, for a total of $4,725.00; and (2) counsel Teresa Allen reasonably expended 26 hours in this action at a reasonable rate of $350.00 per hour, for a total of $9,100.00.  Accordingly, the Court finds that Plaintiff is entitled to attorneys' fees in the amount of $13,825.00.

### IV.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion is GRANTED in part and DENIED in part as follows:

1.    Plaintiff's motion for evidentiary sanctions is DENIED;

2.    Plaintiff's motion for an order finding contempt is DENIED;

3.    Plaintiff's motion for sanctions in the form of attorneys' fees is GRANTED IN PART;

---

[9]  The Court did pause in reviewing some of the expended hours.  For example, following deductions of 2.2 hours from the time expended on the reply brief, Plaintiff is still requesting 6.5 hours for work related to drafting the reply brief for Counsel Allen.  The Court notes that the reply brief is quite short, however, given no objection was made to the amounts of hours expended relating directly to the instant motion, and the fact that counsel took the initiative to deduct substantial hours on their own, the Court does not find any such hours to be wholly unreasonable and will award the full amount of hours requested after the date of the order on reconsideration.  However, the Court declines to award any hours expended prior to the order on reconsideration was issued, as prior to that date, "the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

4.    The State of California, California Attorney General Xavier Becerra, Dolly Matteucci, Dana White, Patricia Tyler, Cindy Black, and Diane Mond,[10] shall, jointly and severally, be obligated to pay $13,825.00 in attorneys' fees to Plaintiff, to be produced to the offices of Haddad & Sherwin LLP no later than fourteen (14) days from the date of this order;

5.    Plaintiff's request for an order compelling the State Defendants to comply with the previous orders of the Court is GRANTED, and within fourteen (14) days of entry of this order, the State Defendants shall produce the following financial condition information for the period from January 1, 2018, to the present:

(a) Two most recent federal tax returns;

(b) Monthly bank statements showing balances (charges and expenditures to be redacted);

(c) Monthly, quarterly, and annual brokerage or investment statements showing balances;

(d) Bank/creditor documentation of annual mortgage, credit card, and other debt balances; and

(e) Pension balances.

IT IS SO ORDERED.

Dated:   __**May 28, 2020**__

_____
UNITED STATES MAGISTRATE JUDGE

---

[10]   While the discovery dispute involved the individual State Defendants only and not Napa State Hospital, Plaintiff's motion seeks the imposition of attorneys' fees jointly and severally against the individual State Defendants, the State of California (the employer of the individual State Defendants and party of interest behind Defendant Napa State Hospital), as well as the Attorney General (who is the head of the State of California's Department of Justice and Office of the Attorney General, counsel for the State Defendants).  Plaintiff did not seek the imposition of attorneys' fees directly naming Counsel Amy McTavish.  State Defendants presented no arguments that seeking the imposition of such fees in this manner through joint and several liability was improper or objectionable.  If the State Defendants disagree with this manner of imposing the award of attorneys' fees, they may file a request for clarification or alteration regarding who is responsible or required to pay the attorneys' fees within three (3) days of entry of this order.  However, such request shall not request alteration of the amount of fees awarded.