MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
TERESA ALLEN (SBN 264865)
BRIAN HAWKINSON (SBN 341856)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

SANJAY S. SCHMIDT (SBN 247475)
LAW OFFICE OF SANJAY S. SCHMIDT
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Telephone:     (415) 563-8583
Facsimile:     (415) 223-9717

Attorneys for Plaintiff Lucy Atayde

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LUCY ATAYDE, Individually and as Successor in Interest of Decedent RICHARD MICHAEL RAMIREZ, <br><br> Plaintiff, <br><br> vs. <br><br> NAPA STATE HOSPITAL, STATE OF CALIFORNIA DEPARTMENT OF STATE HOSPITALS, a public entity, Jointly and Severally, <br><br> Defendants. | Case No. 1:16-cv-00398-ADA-SAB <br><br> **PLAINTIFFS' SEPARATE SUPPLEMENTAL PRETRIAL STATEMENT SECTIONS VI AND VIII** <br><br> **Final Pretrial Conference** <br> **Date:** March 6, 2023 <br> **Time:** 1:30 p.m. <br> **Place:** Courtroom 1, 8th Floor <br><br> **Trial Date:** May 23, 2023 |

Pursuant to the Court's Amended Tentative Pretrial Order dated March 7, 2023 (ECF 252), Plaintiffs, by and through their counsel HADDAD & SHERWIN LLP, submit the following Separate Supplemental Sections to the Joint Pretrial Statement: [1]

## VI.    Special Factual Information in Certain Actions:

### Tort action for wrongful death:

Pursuant to Local Rule 281(b)(6) and the Court's Amended Tentative Pretrial Order (doc. 252), Plaintiffs provide the following further information:

**(A) The date, place, and general nature of the incident; the particular acts, omissions, or conditions constituting the basis for liability; the particular acts, omissions or conditions constituting the basis of any defense; any statute, ordinance, or regulation violated by either party; the applicability of the doctrine of strict liability or res ipsa loquitor.**

Richard Ramirez died by suicide on December 14, 2014.  The State's delays in obeying the court orders to admit him for treatment and involuntary medication at Napa State Hospital or other appropriate facility range from **80 days** from September 26, 2014 when the court ordered and

---

[1] Plaintiffs are well-aware that this Court ordered the parties to re-file JOINT sections of the Joint Pretrial Statement, including Section III (Undisputed Facts), Section VIII (Points of Law), and Section XVII (Agreed Statements).  (Doc. 252).  As explained in the Declaration of Michael J. Haddad filed herewith, Defendant State of California, through it's counsel, refused to file a joint Section VIII re: Points of Law, and refused even to show Plaintiffs what it intended to file separately before filing it.

This Court also ordered Plaintiffs to provide the proper information in Section VI (Special Factual Information for torts and wrongful death cases).  Defendants also have refused to sign on to a complete amended joint pretrial statement with the four sections this Court ordered re-done along with the other original joint sections, in one complete document.  The parties have already filed their joint supplemental Sections III and XVII.  (Doc. 254).  Due to Defendant State of California's refusal to file a joint Section VIII or to sign on to an amended joint pretrial statement that includes Section VI clearly submitted on behalf of Plaintiffs, Plaintiffs have no choice but to file Sections VI and VIII separately and in a separate document.

Plaintiffs apologize that this is not what the Court ordered, and would have complied with this Court's directions if Defendant had so permitted.

declared Mr. Ramirez IST and referred him to DSH/CONREP for placement; **73 days** from October 3, when DSH/CONREP advised NSH that he was IST and was referred to NSH; **59 days** from the October 17 minute order committing Mr. Ramirez to NSH, or other appropriate facility; and **52 days** from the October 24 Commitment Order.

NSH routinely and systemically refused to accept patients it had been ordered to admit for restorative treatment, and instead put the patients on a waiting list, where they languished for months, and sometimes up to a year.  NSH had a practice of not admitting inmates until the committing court issued an Order to Show Cause why the DSH should not be held in contempt of court for failing to comply with a commitment order.  The State Defendants received 8,094 OSC's for disobeying a court order of commitment, just from January 2014 through the end of June 2019. Through 2018, there were at least 12 known deaths of IST patients awaiting court-ordered admission to a state hospital, including Mr. Ramirez.

More than a decade before the events in this case, the Ninth Circuit, addressed similar admission delays for IST patients to Oregon's state hospital system, and explained that, "[h]olding incapacitated criminal defendants for weeks or months violates their due process rights…."  *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121-22 (9th Cir. 2003).  As Judge Drozd held in the Court's summary judgment order in this case,

>  [T]he undisputed facts on summary judgment in this case establish that defendant was aware that the decedent had been committed to NSH, and yet he was completely denied admission to NSH for nearly two months.  Additionally, it appears that such denials have become systematic within the NSH and DSH systems. *See, e.g., Stiavetti v. Clendenin*, 65 Cal. App. 5th 691, 716, 280 Cal. Rptr. 3d 165 (2021) ("'[G]iven the many years DSH [and DDS] [ha]ve had to address excessive wait times,' they simply have 'not done enough to warrant continuous excusal from' commencing substantive services for all IST defendants in a timely manner.").

(Doc. 237, pp. 24-25).

The *Stiavetti* Court affirmed a trial court's state-wide order finding that the DSH Director and state hospital administrators "have systematically violated the due process rights of all IST defendants in California by failing to commence substantive services designed to return those defendants to competency within 28 days of service" of commitment orders.  *Id*. at 695.

In *People v. Kareem A.*, 46 Cal.App.5th 58 (2020), the court of appeal affirmed an award of

sanctions against DSH for failing to admit 247 IST defendants until 60 or more days after the issuance of the commitment orders.  The Court concluded that "DSH did not have a valid excuse for violating commitment orders," considering that "DSH has had over a decade to evolve in order to meet the rising demand of IST beds, and yet the IST waitlist continued to grow." *Id.* at 79.  In another case where the California Court of Appeal upheld sanctions against DSH, the court explained: "[t]he responsibility to fix the problem falls squarely on the shoulders of [DSH].  This Court is convinced that none of the collaborative efforts over the past several years have given [DSH] sufficient incentive to carry out that responsibility, and the problem has not been fixed. [DSH] continues to violate the Court's orders in a large number of cases each year." *People v. Aguirre,* 64 Cal.App.5th 652, 669-70 (2021).

After summary judgment, the sole remaining claims are Plaintiff's survival/wrongful death claims based on Defendants' violations of Richard Ramirez's rights under the ADA and RA.  The legal basis for those claims is set forth in Section VIII (Points of Law), below.

Plaintiff alleges that the State of California, through the Department of State Hospitals and Napa State Hospital, discriminated against Richard Ramirez in violation of the ADA and Rehabilitation Act in three ways:

> (1) by excluding Richard Ramirez from participation in the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs; and/or

> (2) by "otherwise discriminating against him," either by disparate treatment or disparate impact, with regard to the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs; and/or

> (3) by denying him reasonable modifications or accommodations for timely access to the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs.

First, the State excluded Richard Ramirez from its services, programs, or activities for persons found to be IST by disobeying the court orders to treat and medicate him at Napa State Hospital or other appropriate facility, thereby constituting an outright denial of mental health care that was "so unreasonable as to demonstrate that they were discriminating against him because of his disability."  (Doc. 237, p. 23:22-28 (quoting *Kimon v. New Hampshire Dep't of Corr.*, 451 F.3d

274, 285-87)).  Plaintiff's experts will explain how the State had the ability to build more state hospital bed space to meet their constitutional and statutory duties to their IST patients, or to alter their practices to open more existing bed space, or to conduct acuity reviews (triage) of all IST patients ordered to state hospitals so that the most severely ill and at-risk patients were given priority admission according to their disabilities and needs.

Second, the State "otherwise discriminated against" (doc. 237, p. 22:2-3 (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)) Richard Ramirez, with either disparate treatment or impact (doc. 237, p. 22:17-18.  Based on his disability and need for IST restorative treatment, Mr. Ramirez was treated worse than convicted prisoners committed to NSH who are instead triaged based on their mental health acuity level and who must be admitted to a State Hospital within 10 days if they have acute needs and 30 days with intermediate needs.  If Mr. Ramirez had been a convicted prisoner rather than a civilly detained IST patient, he would have been triaged and admitted to a State hospital within 10 days.  Mr. Ramirez also was placed in a significantly worse position than non-IST pretrial detainee defendants, because he had to remain incarcerated in jail – as a mere civil detainee, with criminal charges having been suspended – just waiting for DSH/NSH to admit him to a hospital for court-ordered restorative treatment, while non-IST defendants were entitled to a speedy trial, and in most cases, bail.  And, due to his severe mental illness causing him to pose a continuing danger to himself, Richard Ramirez was subjected to greater risk of substantial injury than less acutely ill IST inmates by the state hospitals depriving him of any systematic acuity review or triage.

Third, the State denied Richard Ramirez reasonable accommodation by refusing to provide acuity review, or triage, for all IST patients on the admission wait-list so that the most severe and at risk patients would be admitted first; by refusing to inform county stakeholders (courts, jails, public defenders) of NSH's unwritten and largely unknown practice at that time that if a county stakeholder requested a priority admission for a particular at-risk patient, NSH would conduct a personalized acuity review that, if granted, could result in next-bed admission (County jail witnesses in this case will testify that they were never informed that they could request an acuity review for their IST inmates, and that had the State so informed them, they would have requested an

acuity review for Richard Ramirez); and by refusing to allow DSH/CONREP to recommend admission to "another appropriate facility," if a bed were not available at a state hospital, contrary to both the Commitment Order and Cal. Pen. Code § 1370(a)(1)(B)(i).

As shown below in Section VIII, Plaintiff pled all of these liability theories in her Second Amended Complaint (doc. 148, ¶¶ 153-163).

Strict liability and res ipsa loquitor do not appear to have application in this matter, except for the State's violation of the court orders requiring it to admit and treat Richard Ramirez at a state hospital or other appropriate facility, and the State's longstanding and systematic delays that routinely violated IST patients' due process rights as stated in *Mink* and *Stiavetti*, among other cases. As Judge Drozd for this Court explained in the summary judgment order, "The court here concludes that—based on the Ninth Circuit's decision in *Mink*—a jury could reasonably find from the evidence presented on summary judgment that the nearly two months the decedent spent in the Merced County Jail—after the Merced County Superior Court issued an order requiring his commitment at NSH for competency restoration—violated his due process rights to restorative treatment." (Doc. 237, p. 15:23-28).

In its Answer (doc. 155) to the SAC, the State pled only two affirmative defenses to the ADA/RA claims:

AFFIRMATIVE DEFENSE NO. 14:

The Department of State Hospitals is an agency of the State and is immune from suit under the Eleventh Amendment from an action arising under the Americans with Disabilities Act (ADA) Title II and actions arising under the Rehabilitation Act (RA). No fundamental constitutionally guaranteed right is at issue and the Department of State Hospitals is not the recipient of federal funds in providing services to the State Courts for detainees designated as IST.

AFFIRMATIVE DEFENSE NO. 15:

Department of State Hospitals is not required to modify policies, practices or procedures to provide an accommodation when the modification would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. 35.130.

Affirmative Defense No. 14 does not apply at all. A state cannot claim Eleventh Amendment Immunity under either Title II of the ADA or the RA. *See Lovell v. Chandler*, 303 F.3d 1039, 1050–51 (9th Cir. 2002) (holding that the Eleventh Amendment does not bar claims

against the State brought under Title II of the ADA); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (citing *Clark v. State of California*, 123 F.3d 1267, 1271 (9th Cir. 1997) (holding that "by accepting federal funds," a state waives any immunity under the Eleventh Amendment as to the RA's anti-discrimination provisions.)); 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . . or the provision of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

Further, Defendant State of California has stipulated, "At all material times, the Department of State Hospitals and Napa State Hospital were public entities providing services, benefits, and programs and receiving federal financial assistance pursuant to Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act." (Doc. 252, p. 9, Stipulation No. 4).

Affirmative Defense No. 15, under 28 C.F.R. 35.130, on its face can only apply to Plaintiffs' failure to accommodate theory, and not to the 'exclusion from participation' and 'disparate treatment or impact discrimination" theories.

The State's unpled defenses include that it lacked sufficient state hospital beds to accommodate all of the IST patients ordered into its care and that its hospital administrators and employees were just following state regulations and policies. However, "[l]ack of funds, staff or facilities cannot justify the State's failure to provide [IST patients] with [the] treatment necessary for rehabilitation." *Mink*, 322 F.3d at 1121. The State also seeks to assess contributory fault on County jail correctional and medical staff for allowing Richard Ramirez to commit suicide in the Merced County Jail. However, "[s]everal courts have held that contributory negligence is not an affirmative defense to a violation of the Americans with Disabilities Act." *Barrilleaux v. Mendocino Cty.*, No. 14-cv-01373-DMR, 2018 U.S. Dist. LEXIS 126291, at *80, n. 14 (N.D. Cal. July 26, 2018) citing *Doe v. St. John's Hosp. of the Hosp. Sisters of the Third Order of St. Francis*, No. 16-3172, 2016 U.S. Dist. LEXIS 140412, at *6-8 (C.D. Ill. Oct. 11, 2016). See also *McCune v. Munirs Co.*, No. 2:12-cv-02733-GEB-EFB, 2013 U.S. Dist. LEXIS 141553, at *9 (E.D. Cal. Sept. 30, 2013) (striking the contributory negligence affirmative defense as impertinent because contributory negligence is an affirmative defense to a tort claim and the Plaintiff, who alleged an ADA claim, had not alleged

a tort claim).

**(B) Each plaintiff's age; Injuries sustained; any prior injury or condition worsened; periods of hospitalization; medical expenses and estimated futures medical expenses; the period of total and/or partial disability; annual monthly or weekly earnings before the incident; earnings loss to date and estimated diminution of future earnings power; property damage; general damages; punitive damages.**

Richard Ramirez was 27 years old at the time of his death on December 15, 2014.  Plaintiff Lucy Atayde will be 53 years old at the time of trial.  Plaintiffs do not seek any special economic damages.  Punitive damages are not permitted against the State.  Plaintiffs seek only non-economic damages for their survival claim and wrongful death claim (Cal. Code of Civil Proc. §§ 377.20 *et seq*. and 377.60 *et seq*.).  Those non-economic damages include:

    a.    Loss of support and familial relationship, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (pursuant to wrongful death claim);

    b.    Richard Ramirez's loss of life, (pursuant to survival claim and federal civil rights law);[2]

    c.    Richard Ramirez's 80 days of conscious pain and suffering (pursuant to survival claim and federal civil rights law).[3]

Plaintiffs also claim attorneys' fees and costs allowable under federal law on her 42 U.S.C. §12205 and 29 U.S.C. § 794a(b) claims.

---

[2] *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (reaffirming that the estate recovers for the Decedent's pre-death pain and suffering and that the limitation on damages in C.C.P. § 377.34 does not apply in §1983 civil rights survival actions).  The same goals and purposes behind § 1983 would also apply to the ADA and RA.

[3] *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102-1103 (9th Cir. 2021) ("Prohibiting loss of life damages would run afoul of § 1983's remedial purpose as much as (or even more than) the ban on pre-death pain and suffering damages").

**(C) In wrongful death actions: the names and ages of the dependents; the annual, monthly or weekly contribution of decedent to dependents before death; the physical condition, education, and training of the decedent at the time of death.**

Ms. Atayde was not financially dependent on her son at the time of his death.  Mr. Ramirez was disabled by severe mental illness, including schizophrenia, personality disorder and psychotic disorder NOS ("not otherwise specified").

Richard Ramirez was unmarried and had no children at the time of his death.  Mr. Ramirez's mother, Plaintiff Lucy Atayde, was his closest relative.  Ms. Atayde is Mr. Ramirez's Successor in Interest, with standing to bring Mr. Ramirez's survival claim, as "the beneficiary of decedent's estate," pursuant to CCP §§ 377.10 and 377.11.  And, as the "person entitled to the property of the decedent by intestate succession," Ms. Atayde also is the person with standing to bring a wrongful death claim "for the death of [her son] caused by the wrongful act or neglect of another."  CCP § 377.60.

Defendants incorrectly claim that Plaintiff Atayde "does not have an active personal injury or wrongful death claim, only a singular claim under the ADA and RA."  (Doc. 255, p. 1, fn 1).  In fact, the SAC pleads that Plaintiff Atayde brings all claims "pursuant to California Code of Civil Procedure sections 377.20, et seq. and 377.60, et seq., which provide for survival and wrongful death actions."  (Doc. 148, ¶ 4).  In their Answer, "Defendants admit that plaintiff has brought this action individually and on behalf of Decedent."  (Doc. 155, ¶ 4).  The SAC specifically pleads Ms. Atayde's wrongful death damages and Mr. Ramirez's survival damages.  (Doc. 148, ¶¶ 125 (a) and (b); 126 (c) and (d)).  Those damages are incorporated into the ADA/RA claims in the SAC ¶¶ 135 and 163.  Defendant State of California never moved for summary judgment concerning Plaintiff's wrongful death claim specifically or damages generally.

**Wrongful Death Damages Summary.**  Richard, affectionately called "Ricky" by his mother, was the oldest of three children.  Ricky grew up as a normal boy.  Ms. Atayde could rely on Ricky to help take care of his younger siblings, and the children were all very close.  Ricky liked to write music, box, and was also active in his church, particularly with the youth.  He organized sporting events in his neighborhood and was generally liked by everyone.  He was a very

1   charismatic, larger-than-life figure with a zest for life and people seemed to gravitate towards him.

2        In his late teens, Ricky started exhibiting signs of mental illness.  Even though he began not

3   feeling like himself, he never let his illness stop him from living his life.  Numerous witnesses will

4   testify that Ricky was an energetic guy with a great sense of humor.  Even former Defendant nurse

5   Debbie Mandujano testified that Ricky was "funny" and that "He would laugh, joke.  He's very

6   sweet." (Mandujano Dep. 87: 5-12).  Richard Ramirez appeared to recognize that his mental health

7   was diminishing.  Tragically, he stated to Dr. Hamm, "his mom raised him to be a good boy but

8   he's a poster child for psychosis."

9        As Richard Ramirez's mental condition worsened, Ms. Atayde worried about the lack of

10  treatment he was receiving, but he was an adult and she could not force him into treatment.  Even as

11  he struggled with his mental illness, Richard Ramirez regularly visited his mom at the restaurant

12  where she worked.  After Mr. Ramirez was arrested in August 2014, and the judge ordered him

13  committed to Napa State Hospital, Ms. Atayde cried with relief that her beloved son would now

14  receive the psychiatric care he so desperately needed.  Due to the State's longstanding refusal to

15  address unacceptable and illegal wait times for admission of court-ordered IST patients to state

    hospitals, Richard Ramirez never did receive that court-ordered care.

16        Richard Ramirez passed away nine years ago, yet time has not healed Lucy Atayde's pain.

17  The family has lived in the tiny town of Los Banos for years, and everywhere Ms. Atayde goes

18  there is a reminder of Ricky.  She is always thinking about him, especially during the Thanksgiving

19  and Christmas holidays.  Richard Ramirez died right before Christmas, and family holiday

20  gatherings always feel incomplete without him.  No matter how joyous the day may be, she cannot

21  really enjoy it without Ricky.  She also acutely feels her son's absence during football season when

22  the family gathers together on Sundays to watch Raiders football games, Richard's favorite team.

23  Most of all Ms. Atayde misses the regular everyday aspects of her relationship with her son, just

24  hanging out and having a meal together, and just joking around with each other.

25        Lucy Atayde's life will never be the same.  She went into a deep depression after her son's

26  death and it has been extremely difficult for her, and for Richard's brother J.J. and sister Rebecca to

27  move forward.  Richard Ramirez's siblings avoid talking about him in front of their mother because,

28

although she loves hearing stories about Ricky, she still gets very emotional thinking about him.

Lucy Atayde has 5 grandchildren with whom she is very involved.  It saddens Ms. Atayde that she will never be a grandmother to Ricky's children and that she will never see him play with his children.  Lucy knows that her son, Richard, would have been a great father and believes he would likely be coaching his children on a soccer or football team, two sports he loved – had he gotten the court-ordered care he needed from DSH/NSH.

## VIII.  Points of Law

Judge Drozd denied summary judgment of Plaintiffs' ADA and RA claims against the State, and granted summary judgment of all other claims against the State and its employees.  (Doc. 238).  The sole remaining claims in this case are Plaintiffs' survival and wrongful death claims for violation of Richard Ramirez's rights under the ADA/RA.  Courts have determined that the rights and claims under the ADA and RA are co-extensive.

In its order, the Court set forth some of the relevant law concerning the ADA/RA claims:

Title II of the ADA requires public entities to refrain from both discriminating against qualified individuals with a disability, and from excluding such individuals from benefiting from or participating in a public program because of their disability. 42 U.S.C. § 12132. The ADA also requires public entities to make reasonable accommodation to disabled individuals. Section 504 of the RA extends these protections to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794; *see also Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999) (observing that Title II of the ADA was expressly modeled after § 504 of the RA, and that there is "no significant difference in analysis of the rights and obligations created by the ADA and the [RA]").

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id.*

Both the ADA and the RA apply in the context of correctional facilities, and both prohibit disabled inmates from being excluded from participation in inmate services, programs, or activities, including medical programs. *See Pierce v. County of Orange*,

526 F.3d 1190, 1214 (9th Cir. 2008) (explaining that the ADA and RA apply in the context of correctional facilities); *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (acknowledging that the phrase "services, programs, or activities" as used in 42 U.S.C. § 12132 includes medical programs in prison). A plaintiff can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA or the RA by pleading either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modification or accommodations. *See Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004). "[T]he ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'" *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998); *see also McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim.").

(Doc. 237, pp. 21-22).

Thus, based on this law and the claims pled in the operative Second Amended Complaint (described below), Plaintiffs have three theories of ADA/RA liability that Defendant violated those laws:

(1) by excluding Richard Ramirez from participation in the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs; and/or

(2) by "otherwise discriminating against him," either by disparate treatment or disparate impact, with regard to the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs; and/or

(3) by denying him reasonable modifications or accommodations for timely access to the State of California's services, programs, or activities for persons found to be incompetent to stand trial, including restorative treatment programs.

Plaintiffs have summarized the factual bases for each of those paths to liability in Section VI above.

Plaintiffs' claims for violation of Title II of the ADA and the Rehabilitation Act are pled in the operative Second Amended Complaint (doc. 148, ¶¶ 153-163), and include that the State: "discriminated against MR. RAMIREZ and Plaintiff, violating their ADA, RA, and state protected rights," including by:

(b) failing to provide services or to accommodate RAMIREZ with access to the programs and services of NSH or State designated mental health hospitals and facilities for persons who qualify for access and services under Penal Code § 1370

(a)(2) or Welfare and Institutions Code 5150; … (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their hospitals … and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (e) denying MR. RAMIREZ, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of the STATE … in violation of 28 C.F.R. § 35.130(b)(1)(i); (f) by reason of Plaintiff's mental disabilities, Defendants did not afford Plaintiff an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (g) on the basis of Plaintiff's disability, the named Defendants failed to provide Plaintiff an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); ([h]) limited MR. RAMIREZ, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which MR. RAMIREZ was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii).

(Doc. 148, ¶ 161).  The SAC further states at paragraph 162:

MR. RAMIREZ was denied the benefits of the services, programs, and activities of the STATE and COUNTY, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk for suicide, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, RAMIREZ had mental impairments that substantially limited one or more of his major life activities.

(Doc. 148, ¶ 162).

The Court incorrectly and unnecessarily stated in its summary judgment order: "Plaintiff's ADA and RA claims, as now presented, are based solely on a failure to accommodate theory, as opposed to a disparate treatment or disparate impact theory. (*See* SAC at 148.)." (Doc. 237, p. 22:25-27).  Actually, the SAC does plead all three liability theories, as shown in the preceding paragraph above.  In addition, in its order, the Court did find factual support for all three liability theories. (Doc. 237, pp. 23:8 – 25:19).  Plaintiffs briefed all three theories in opposition to the State's motion for summary judgment. (See doc. 212, pp. 20-23).  Moreover, it was not necessary for the Court to find questions of fact

for each liability theory to deny Defendants' motion for summary judgment of the ADA/RA

claims – one viable liability path was sufficient to deny summary judgment.  Plaintiffs

respectfully request that this Court take a fresh look at whether Plaintiffs have submitted

sufficient evidence for each liability theory should Defendants make an appropriate Rule 50

motion at the close of evidence.

Defendants' Answer to the Second Amended Complaint (doc. 155) includes only two

affirmative defenses related to the ADA/RA claims:

AFFIRMATIVE DEFENSE NO. 14:

The Department of State Hospitals is an agency of the State and is immune from suit
under the Eleventh Amendment from an action arising under the Americans with
Disabilities Act (ADA) Title II and actions arising under the Rehabilitation Act (RA).
No fundamental constitutionally guaranteed right is at issue and the Department of
State Hospitals is not the recipient of federal funds in providing services to the State
Courts for detainees designated as IST.

AFFIRMATIVE DEFENSE NO. 15:

Department of State Hospitals is not required to modify policies, practices or
procedures to provide an accommodation when the modification would
fundamentally alter the nature of the service, program, or activity. 28 C.F.R. 35.130.

For the reasons stated in Section VI above, Affirmative Defense No. 14 cannot apply

here and Affirmative Defense No. 15 is limited to the 'failure to accommodate' theory of

liability.

Respectfully Submitted,

Dated:  March 21, 2023                    HADDAD & SHERWIN LLP

                                          /s/ *Michael J. Haddad*
                                          MICHAEL J. HADDAD
                                          Attorneys for Plaintiff